GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099
H. MARK LYON, SBN 162061
ETHAN D. DETTMER, SBN 196046
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

JENNER & BLOCK LLP
PAUL M. SMITH (*pro hac vice* application pending)
KATHERINE A. FALLOW (*pro hac vice* application pending)
AMY L. TENNEY (*pro hac vice* application pending)
601 13th Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Attorneys for Plaintiffs
VIDEO SOFTWARE DEALERS ASSOCIATION
and ENTERTAINMENT SOFTWARE ASSOCIATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIDEO SOFTWARE DEALERS ASSOCIATION and ENTERTAINMENT SOFTWARE ASSOCIATION,<br><br>Plaintiffs,<br><br>vs.<br><br>ARNOLD SCHWARZENEGGER, in his official capacity as Governor of the State of California; BILL LOCKYER, in his official capacity as Attorney General of the State of California; GEORGE KENNEDY, in his official capacity as Santa Clara County District Attorney, RICHARD DOYLE, in his official capacity as City Attorney for the City of San Jose, and ANN MILLER RAVEL, in her official capacity as County Counsel for the County of Santa Clara,<br><br>Defendants. | CASE NO. C 05 4188<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

1

Complaint for Declaratory and Injunctive Relief

# COMPLAINT

Plaintiffs Video Software Dealers Association ("VSDA") and Entertainment Software Association ("ESA"), by and through their attorneys, aver and allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs are associations whose members include companies that create, publish, manufacture, distribute, import, sell, or rent video games to the public. Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief against enforcement of a new California statute that significantly infringes upon constitutionally protected rights of free expression.

2. The challenged act, Chapter 638, Statutes of 2005 (hereinafter, the "Act"), was signed into law on October 7, 2005, and is due to go into effect on January 1, 2006. The Act penalizes the sale or rental of video games based solely on their expressive content and imposes strict labeling requirements, in violation of the First Amendment. Specifically, the Act makes it illegal for anyone in California to sell or rent to anyone under the age of 18 a "violent" video game. According to the Act, a "violent video game" is a game "in which the range of options available to a player includes killing, maiming, dismembering, or sexually assaulting an image of a human being . . . ." Act, § 1746(d)(1). A person who violates the Act is subject to substantial fines. *Id.* § 1746.3. The Act also unconstitutionally compels speech by manufacturers, distributors, importers, and retailers by requiring that each prohibited video game "that is imported into or distributed in California for retail sale shall be labeled with a solid white '18' outlined in black." *Id.* § 1746.2. The label must measure no less than 2 inches by 2 inches, and must be displayed on the front of the video game package. *Id.*

3. The Act violates the First Amendment and other provisions of the United States Constitution by creating penalties for the sale or rental of video games based solely on a game's purportedly "violent" content. The First Amendment prohibits such content-based censorship. Not only does the Act directly restrict the dissemination and receipt of a considerable amount of fully protected expression, but, because of its numerous vague terms, the Act also creates a chilling effect on a great deal of speech, as video game creators, publishers, manufacturers, distributors, importers,

Complaint for Declaratory and Injunctive Relief

and retailers will respond to the Act's uncertainty by self-censoring, depriving adults and children of access to undeniably protected expression.

4. Similar efforts to regulate video games based on their expressive content have been struck down by every court that has considered this issue, including the Seventh and Eighth Circuits, and a District Court in the Ninth Circuit. *See American Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572, 579-80 (7th Cir. 2001) (holding that video games are protected expression, and striking down ordinance that similarly sought to restrict minors' access to "violent" video games); *Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954, 957 (8th Cir. 2003) (noting that "[t]he mere fact" that video games "appear in a novel medium is of no legal consequence," and striking down ordinance restricting "violent" video games); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180, 1184-85 (W.D. Wash. 2004) (finding that video games are "expressive and qualify for the protections of the First Amendment," and invalidating state statute restricting video games); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002) (confirming that the First Amendment protects the communicative aspect of video games, and rejecting attempts to impose tort liability on "violent" video games); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (same); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181 (D. Conn. 2002) (same).

5. Just as the Act restricts protected expression in violation of clear and binding precedent, it imposes an additional significant First Amendment burden on those who manufacture, distribute, import, sell, and/or rent video games. As explained in Paragraph 2 hereof, the Act requires that any "violent" video game "imported into or distributed in California" be labeled with a 2 inches by 2 inches label bearing the number "18." Act, § 1746.2. This requirement—which conflicts with the voluntary labeling system already employed by the video game industry—significantly burdens the expression rights of Plaintiffs' members. It also unconstitutionally compels speech by forcing Plaintiffs' members to relay a government message with which they may disagree, and for which there is no legitimate, much less substantial, underlying purpose.

6. Because some of Plaintiffs' members create, publish, manufacture, distribute, import, sell or rent games that may fall within the statutory definition, they may be subject to liability under

Complaint for Declaratory and Injunctive Relief

the Act. The Act will violate the free speech rights of Plaintiffs' members not only through direct restriction, but also as a result of the Act's inevitable chilling effect on video game expression.

7. Plaintiffs maintain that (a) the Act is void and of no force and effect because it is unconstitutional under the First and Fourteenth Amendments to the Constitution of the United States and thus actionable under 42 U.S.C. § 1983; and (b) Plaintiffs and their members, as well as many citizens of California, will suffer immediate, serious, and irreparable injury if the Act takes effect.

## JURISDICTION AND VENUE

8. This action arises under the Constitution of the United States, the First and Fourteenth Amendments thereto, and the laws of the United States, 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343(a)(3). This action is brought against the defendants in their official capacity pursuant to 42 U.S.C. § 1983.

9. Venue is proper in the Northern District of California. Many of Plaintiff VSDA's and Plaintiff ESA's members are located in and/or do business in this judicial district, and the claims thus arise in this district. Upon information and belief, Defendants Doyle, Kennedy and Ravel also reside in this judicial district, and are responsible for enforcing the Act within this judicial district.

## INTRADISTRICT ASSIGNMENT

10. This action is properly assigned to the San Jose Division of this Court, as a substantial part of the events or omissions which give rise to the claim occurred in the County of Santa Clara. Civil L.R. 3-2 (c) & (e).

## PARTIES

11. Plaintiff VSDA, established in 1981, is the not-for-profit international trade association for the $24 billion home entertainment industry. VSDA is incorporated in the State of Delaware and its principal place of business is Los Angeles, California. VSDA represents more than 1,000 companies throughout the United States, Canada, and other nations. Its members operate approximately 10,000 retail outlets in the U.S., including more than 1,250 in the State of California, that sell and/or rent DVDs, VHS cassettes, and console video games. Membership comprises the full spectrum of video retailers (from single-store operators to large chains), video distributors, the home

Complaint for Declaratory and Injunctive Relief

video divisions of major and independent motion picture studios, and other related businesses that constitute and support the home video entertainment industry.

12. Plaintiff ESA is a nonprofit trade association organized under the laws of the State of Delaware with its principal place of business in the District of Columbia. A fundamental purpose of ESA is to serve and promote the business and public affairs interests of companies that publish entertainment software used for video games, including such companies' right to publish and distribute works of expression that are protected under the First Amendment to the United States Constitution and similar provisions of the constitutions of various states. ESA members include a number of entities that produce, distribute, and/or import video games to owners and operators of sales and rental outlets within the City of San Jose, the County of Santa Clara, and throughout California.

13. The interests that Plaintiffs VSDA and ESA seek to protect in this action are germane to the purposes of each organization, and neither the claims nor the forms of relief sought in this action require participation by individual members of Plaintiffs. One or more members of each association have standing to bring this action in their own right.

14. Plaintiffs are threatened with immediate, serious, and irreparable injury as a result of the enactment and imminent enforcement of the Act. Once the Act is in force, Plaintiffs and their members will be subject to liability for disseminating works fully protected under the First Amendment. The Act will have an immediate and vast chilling effect upon constitutionally protected speech because those who sell, rent, or permit to be sold or rented video games (and their respective distributors and importers) will, to avoid liability under the Act, refrain from offering for rental or sale a wide array of games, either to minors or to all customers. This will in turn chill video game creators, publishers, manufacturers, distributors, and importers from creating, publishing, manufacturing, distributing, and importing works that may run afoul of the Act's vague definition of prohibited content. Plaintiffs will also be unlawfully compelled by the Act to disseminate a message on behalf of the State of California that is not tied to a legitimate regulatory purpose.

15. The Act will also cause irreparable harm to willing listeners—including both those under age 18 and adults—who will be deprived of the ability to hear speech from Plaintiffs'

members. In this facial challenge to the Act, Plaintiffs have standing to assert not only their own rights and harm, but also that of the potential recipients of speech from Plaintiffs' members.

16. Defendant Arnold Schwarzenegger is the Governor of the State of California. As Governor, he is vested with "the supreme executive power" of the State and "shall see that the law is faithfully executed." Cal. Const. art. 5, § 1. This injunctive action is brought against Governor Schwarzenegger in his official capacity.

17. Defendant Bill Lockyer is the Attorney General of the State of California. He is the "chief law officer" of the State and has the duty to "see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. 5, § 13. Additionally, Attorney General Lockyer has "direct supervision over every district attorney" in the State. *Id.* If, at any point a district attorney of the State fails to enforce adequately "any law of the State," the Attorney General must "prosecute any violations of the law." *Id.* Finally, the Attorney General "shall assist any district attorney in the discharge" of duties when "required by the public interest or directed by the Governor. . . . " *Id.* This injunctive action is brought against Attorney General Lockyer in his official capacity.

18. Defendant George Kennedy is the District Attorney responsible for enforcing the law within the County of Santa Clara. Pursuant to the California Government Code, the District Attorney must prosecute "all actions for the recovery" of fines and penalties. Cal. Gov't Code § 26521. The Act provides that violations thereof may be prosecuted by any District Attorney. § 1746.4. This injunctive action is brought against District Attorney Kennedy in his official capacity.

19. Defendant Richard Doyle is the City Attorney responsible for enforcing the law within the City of San Jose. The California Government Code requires the City Attorney to perform legal services as required by the Legislature. Cal. Gov't Code § 41803. The Act provides that violations thereof may be prosecuted by any City Attorney. § 1746.4. This injunctive action is brought against City Attorney Doyle in his official capacity.

20. Defendant Ann Miller Ravel is the County Counsel responsible for enforcing the law within the County of Santa Clara. In that capacity, she must "discharge all the duties vested in the district attorney." Cal. Gov't Code § 26529. This injunctive action is brought against County Counsel Ravel in her official capacity.

Complaint for Declaratory and Injunctive Relief

## BACKGROUND

### Video Games and the First Amendment

21. The Act seeks to regulate the content of a certain medium of expression (defined as "video games" under the Act) and limit access to certain video games based solely on the content of the expression depicted or contained therein.

22. Video games are a form of artistic expression much like other forms of protected expression, such as movies, books, and music. Video games contain extensive storylines and character development, comparable to that of books and movies. The storylines and plot, and associated dialogue among characters, continue throughout the game play and are an integral part of the game itself. Like the best of literature, the storylines often involve familiar themes such as good versus evil, triumph over adversity, struggle against corrupt governments and rulers, and/or quest for adventure. Expression in other media, such as movies and books, draws thematic ideas directly from video games. Video games similarly draw and evolve themes from other media.

23. Video games also feature the artwork of some of the best modern graphic artists. The typical video game contains many different animated or computer-generated illustrations. Video games also contain music, much of it original and performed by top musicians and orchestras. Like the music that plays during movies, the music in video games enhances and complements the expression conveyed by the images and dialogue, often in dramatic fashion.

24. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press," U.S. Const. amend. I, and the prohibitions of the First Amendment apply to the State of California, U.S. Const. amend. XIV.

25. The First Amendment shields verbal expression, written expression, visual expression, entertainment, art, and music. The protections of the First Amendment apply just as much to video games as they do to books, newspapers, films, theater, and music.

26. The First Amendment also protects expressions and depictions of violence devoid of obscene sexual content. Thus, video games depicting violence—like movies or illustrations that depict violence—are fully protected by the First Amendment.

Complaint for Declaratory and Injunctive Relief

## The Act's Restrictions on Protected Speech

27. The Act was passed by the California Legislature on September 8, 2005, and was signed into law by Governor Schwarzenegger on October 7, 2005. A true, complete, and accurate copy of the Act is attached hereto as Exhibit 1, and is incorporated herein as if fully set forth. The Act is due to go into effect on January 1, 2006.

28. The Act seeks to suppress expression in the video game medium because of the supposed effect of that expression on minors under the age of 18. The Act asserts that the restrictions on speech are justified by a compelling state interest in "preventing violent, aggressive, and antisocial behavior, and in preventing psychological or neurological harm to minors who play violent video games." Act § 1(c).

29. The Act seeks to suppress expression in games deemed "violent video games," defined by the Act as follows:

> "Violent video game" means a video game in which the range of options available to a player includes killing, maiming, dismembering, or sexually assaulting an image of a human being, if those acts are depicted in the game in a manner that does either of the following:
>
> (A)  Comes within all of the following descriptions:
>
> (i)  A reasonable person, considering the game as a whole, would find [it] appeals to a deviant or morbid interest of minors.
>
> (ii)  It is patently offensive to prevailing standards in the community as to what is suitable for minors.
>
> (iii)  It causes the game, as a whole, to lack serious literary, artistic, political, or scientific value for minors[; or]
>
> (B)  Enables the player to virtually inflict serious injury upon images of human beings or characters with substantially human characteristics in a manner which is especially heinous, cruel, or depraved in that it involves torture or serious physical abuse to the victim.

Act § 1746(d)(1).

30. The Act defines the terms contained in § 1746(d)(1)(B) as follows:

> (A)  "Cruel" means that the player intends to virtually inflict a high degree of pain by torture or serious physical abuse of the victim in addition to killing the victim.
>
> (B)  "Depraved" means that the player relishes the virtual killing or shows indifference to the suffering of the victim, as evidenced by torture or serious physical abuse of the victim.

8

Complaint for Declaratory and Injunctive Relief

(C) "Heinous" means shockingly atrocious. For the killing depicted in a video game to be heinous, it must involve additional acts of torture or serious physical abuse of the victim as set apart from other killings.

(D) "Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, substantial disfigurement, or substantial impairment of the function of a bodily member, organ, or mental faculty. Serious physical abuse, unlike torture, does not require that the victim be conscious of the abuse at the time it is inflicted. However, the player must specifically intend the abuse apart from the killing.

(E) "Torture" includes mental as well as physical abuse of the victim. In either case, the virtual victim must be conscious of the abuse at the time it is inflicted; and the player must specifically intend to virtually inflict severe mental or physical pain or suffering upon the victim, apart from killing the victim.

(3) Pertinent factors in determining whether a killing depicted in a video game is especially heinous, cruel, or depraved include infliction of gratuitous violence upon the victim beyond that necessary to commit the killing, needless mutilation of the victim's body, and helplessness of the victim.

Act, §§ 1746(d)(2), (3).

31. Section 1746.1(a) of the Act would impose restrictions on freedom of expression by making it unlawful for any "person" to "sell or rent a video game that has been labeled as a violent video game to a minor." Act, § 1746.1(a). A minor is defined as a person under 18 years of age. *Id.* § 1746(a). A "person" under the Act means "any natural person, partnership, firm, association, corporation, limited liability company, or other legal entity." *Id.* § 1746(b).

32. The Act further provides that "[e]ach violent video game that is imported into or distributed in California for retail sale shall be labeled with a solid white '18' outlined in black. The '18' shall have dimensions of no less than 2 inches by 2 inches" and "shall be displayed on the front face of the video game package." Act, § 1746.2.

33. A person who violates any provision of the Act is subject to a $1,000 fine. Act, § 1746.3.

Complaint for Declaratory and Injunctive Relief

34. A person is not liable under the sale/rental prohibition if the person selling or renting a prohibited game presents "[p]roof that a defendant, or his or her employee or agent, demanded, was shown, and reasonably relied upon evidence that a purchaser or renter of a violent video game was not a minor or that the manufacturer failed to label a violent video game as required" by the Act. Act, § 1746.1(b). The Act states that the restriction on the sale or rental of a "violent" video game to a minor does not apply if the person selling or renting the game is the "minor's parent, grandparent, aunt, uncle, or legal guardian." *Id.*, § 1746.1(c). The Act does not, however, establish an exemption for minors who purchase or rent "violent" video games with parental permission.

35. The Act states that the sale/rental restrictions, and the labeling requirements, do not apply to any person who: (a) "is employed solely in the capacity of a salesclerk or other, similar position"; (b) "does not have an ownership interest in the business in which the violation occurred"; and (c) "is not employed as a manager in that business." Act. § 1746.3.

36. The Act permits a parent, legal guardian, or other adult acting on a minor's behalf to report a suspected violation of the Act to a city attorney, county counsel, or district attorney, and any of those officials may prosecute a violation of the Act. Act, § 1746.4.

### The Act Violates the First Amendment

37. By restricting the sale or rental of video games deemed "violent" under the statute, the Act imposes penalties based on the content of the games' expression. The Act therefore is subject to the most exacting scrutiny under the First Amendment.

38. No compelling state interest exists that justifies the broad suppression of speech imposed by the Act. The Act is based on purported legislative findings that exposing minors to "violent" video games makes "minors more likely to experience feelings of aggression," promotes "violent, antisocial or aggressive behavior," and causes "a reduction of activity in the frontal lobes of the brain." Act § 1(a). But those claims, which ignore conflicting evidence, are not supported by credible factual support. The purported legislative "findings" are not based on reasonable inferences drawn from substantial evidence.

39. In addition, the Act suppresses purportedly "violent" expression without any legislative finding or underlying evidence that exposure to such expression is directed to and likely to

10

Complaint for Declaratory and Injunctive Relief

cause imminent violent action by the game player. Instead, the Legislature merely concluded that players of violent video games are "more likely" to experience "feelings" of aggression. Act, § 1(a).

40. The Act is not the least restrictive means of achieving any of the Legislature's asserted goals, and the Legislature refused to consider less speech-restrictive means of regulating minors' access to "violent" video games, including those that were proposed by Plaintiffs and their members (such as educational efforts, parental controls, and retailer enforcement initiatives).

41. The Act presents Plaintiffs' members with the possibility of arbitrary and discriminatory enforcement because the Act fails to set forth minimal standards for enforcement. The Act does not set forth adequately specific standards for determining which video games have sufficient "violent" content to fall within the Act's prohibitions.

42. The Act is rife with unconstitutionally vague terms, which fail to give reasonable notice of what conduct is prohibited. The vague terms include, but are not limited to: "killing, maiming, dismembering, or sexually assaulting *an image of a human being*"; "deviant or morbid interest of minors"; "patently offensive to prevailing standards in the community as to what is suitable for minors"; "virtually inflict serious injury upon images of human beings or characters with substantially human characteristics"; "virtually inflict a high degree of pain"; "the player relishes the virtual killing"; "shows indifference to the suffering of the victim"; "the virtual victim must be conscious of the abuse"; "shockingly atrocious"; "virtually inflict severe mental or physical pain or suffering"; and "gratuitous violence." These terms have no clear meaning, especially in the context of video games. For example, how would a person assess whether a particular video game depicted violence against a character with "substantially human characteristics"? Would a character with magical powers qualify? What about a zombie? A centaur? Likewise, what is meant by a "deviant or morbid interest of minors"? How can a person "virtually inflict" physical or mental pain? How can a "virtual victim" be "conscious" of anything? At what point does a computerized image experience a "high degree of pain"? What constitutes a player "relish[ing] [a] virtual killing?" Persons of ordinary intelligence are forced to guess at the meaning and scope of the Act.

43. Even setting aside the inherent ambiguity in the Act's terms, the Act requires video game publishers, manufacturers, distributors, and importers to assess whether a video game is violent

based on subjective assessments of a game player's intent. For example, various provisions of the Act require an assessment based on whether the player "intend[s] to inflict a high degree of pain" or "relish[es] the virtual killings." Act, §§ 1746(d)(2)(A),(B). Given that the course of play differs for each game player, video game publishers, manufacturers, distributors, and importers will be unable to assess whether a particular game falls within the Act's prohibitions.

44. The lack of adequate guidelines to determine "violent" conduct will have a chilling effect on the expression of Plaintiffs' members. Under the Act, video game creators, publishers, manufacturers, distributors, and importers must determine which games may be subject to the statute's penalties. By their nature, games offer the player a wide range of possible game play of significant duration. Even if only a small portion of a game contained content that theoretically met the Act's definitions, the entire game would be suppressed. Moreover, to ensure that the games do not violate the Act, those who import and/or distribute video games in California would be expected to review the entire possible course of play in a particular game. The significant burdens imposed by the law will ultimately lead to a chilling of speech of video game creators, publishers, manufacturers, distributors, importers, retailers and consumers.

45. In addition, the Act forces anyone who imports or distributes video games in California to determine which video games may be considered "violent," and thus must be labeled with the large "18" sticker, to avoid penalties under the labeling provisions. As a result, different manufacturers, distributors, and importers will almost certainly reach different, and conflicting, determinations as to what types of game play qualify for the "18" label under the Act.

46. The Act's labeling requirement imposes an additional content-based burden on Plaintiffs' members that is unsupported by a compelling state interest. The video game industry has already invested significant amounts of money and resources into developing labels, signs, and materials that educate parents and consumers about the industry's voluntary rating system. That system — which the FTC has called the "most comprehensive" of industry-wide media rating systems — is implemented by the Entertainment Software Rating Board ("ESRB"), a self-regulatory body that assigns independent ratings and descriptions for video game content. The Act's size, appearance, and placement requirements conflict with the ESRB rating system, and complying with

Complaint for Declaratory and Injunctive Relief

the Act's requirements in this regard would be extremely costly, burdensome, and impractical for those who are required to label games under the Act. These requirements also unconstitutionally compel manufacturers, distributors, and importers — and the retailers that display the games — to disseminate a State message for which there is no underlying substantial regulatory interest.

47. Some of the content displayed by the video games created, published, manufactured, distributed, imported, rented, sold, and/or otherwise made available to the public by Plaintiffs or their members, while fully protected by the United States Constitution, may be deemed by law enforcement officials in California, including the Defendants, to meet the Act's definitions for "violent video games," thus subjecting Plaintiffs or their members to the threat of prosecution, as well as creating a chilling effect on their rights to freedom of expression.

48. The Act would infringe the First Amendment rights of (i) businesses physically present in California, including Plaintiffs' members, who face the threat of prosecution if they do not comply with restrictions on their right to distribute constitutionally protected expression, (ii) potential customers of those businesses—including both those under 18 as well as adults—who, because of these restrictions, will be deprived of the opportunity to receive fully protected speech, and (iii) businesses located outside California, including members of Plaintiffs, whose ability to distribute and/or import their creative works within California will be burdened based on the content of those works of expression.

49. The Act threatens Plaintiffs, their members, and other businesses that create, publish, manufacture, distribute, import, sell, or rent video games, as well as adults and those under 18 who wish to receive the speech in those games, with serious, immediate, and irreparable injury for which there is no adequate remedy at law.

50. In this facial constitutional challenge to the Act, Plaintiffs have standing to assert the rights of, and harm to, the potential customers of Plaintiffs and their members.

51. The Act would cause Plaintiffs and their members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

Complaint for Declaratory and Injunctive Relief

52. In the event Plaintiffs prevail on any claims under the Constitution of the United States set forth in this Complaint, Plaintiffs are entitled to recover attorneys' fees under 42 U.S.C. § 1988.

## COUNT I

### (First and Fourteenth Amendments—Freedom of Expression)

53. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 52 as if fully set forth herein.

54. The Act would restrict access to video games based solely upon the "violent" content of the creative expression depicted. The content of the expression made subject to these restrictions is not obscene or obscene as to minors. Nor does it fall within any other category of expression that may constitutionally be regulated based solely upon its content.

55. The Act imposes unconstitutional content regulation by prohibiting a person from disseminating any video game meeting the statutory definition of a "violent video game" to any person under the age of 18 and by requiring manufacturers, distributors, and importers to place large labels on prohibited games. The Act restricts the freedom of video game creators, publishers, manufacturers, distributors, importers, and retailers, as well as purchasers, renters, and other players of such games, to communicate and receive expression that is not constitutionally subject to regulation based upon its content. The Act's suppression of "violent video games" is unsupported by any legislative finding, or underlying evidence, that exposure to such expression is directed to and likely to cause imminent violent action by the game player. Moreover, the Act's stated purposes are not based on credible evidence and are not sufficient under the First Amendment to justify the broad content discrimination imposed by the Act. Not only does the Act fail to serve a compelling governmental interest, but the Act is not narrowly tailored to serve any such interest, and the Legislature did not give adequate consideration to less speech-restrictive means of achieving its goals.

56. The Act does not establish standards for determining which games contain content meeting the description set forth in Paragraphs 29 and 30 hereof. The Act would impose upon those who disseminate video games the burden of determining whether each such video game meets the

14

Complaint for Declaratory and Injunctive Relief

description set forth in Paragraphs 29 and 30 hereof, prior to publishing, manufacturing, distributing, importing, or otherwise holding that game out to the public. The Act imposes upon every such person the risk of substantial penalties. This burden and risk are aggravated by the vagueness of the statutory description of the regulated content. The Act thus would establish an unconstitutional scheme of censorship under which even works of expression that do not meet the statutory description in the Act would be suppressed because of the burden placed upon video game publishers, manufacturers, distributors, importers, and retailers of determining the scope of the Act's coverage and because of the risk of erroneous determinations. Persons disseminating video games (and their respective manufacturers, distributors, and importers) would be induced to refuse to include certain works in their inventories or on their premises, for fear of running afoul of the Act's ambiguous prohibitions. Imposition of this burden and risk serves no compelling interest and is not narrowly tailored to serve any such interest.

57. Furthermore, the Act would compel video game manufacturers, distributors, and importers to label every game that might be "violent" under the Act's ambiguous definition. The labeling requirement essentially compels video game manufacturers, distributors, and importers — and the retailers that display the games — to disseminate the government's message that minors should be denied access to certain video games, even though the games are fully protected as to both minors and adults. Forcing individuals to disseminate a message on behalf of the State of California violates the First Amendment every bit as much as restricting the dissemination of individuals' own messages.

58. For each of the reasons set forth above, and others, the Act is unconstitutional under the First Amendment to the United States Constitution, as applied to the State of California by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. The Act would cause Plaintiffs and their members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

## COUNT II

### (First and Fourteenth Amendments—Vagueness)

59. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 58 as if fully set forth herein.

60. The Act is unconstitutionally vague in that many of the terms and phrases employed therein have no clear meaning in the context of animated video games, including but not limited to, the terms and phrases "killing, maiming, dismembering, or sexually assaulting *an image of a human being*"; "deviant or morbid interest of minors"; "patently offensive to prevailing standards in the community as to what is suitable for minors"; "virtually inflict serious injury upon images of human beings or characters with substantially human characteristics"; "virtually inflict a high degree of pain"; "the player relishes the virtual killing"; "shows indifference to the suffering of the victim"; "the virtual victim must be conscious of the abuse"; "shockingly atrocious"; "virtually inflict severe mental or physical pain or suffering"; and "gratuitous violence." Persons of ordinary intelligence are forced to guess at their meaning and at the scope of the Act.

61. The unconstitutional vagueness of the Act will have a chilling effect on video game creators, publishers, manufacturers, distributors, importers and retailers and on those who seek to hear and view the prohibited video games. In addition, the Act will impose substantial burdens upon persons who sell, rent, or permit to be sold or rented video games, preventing them from exercising their constitutionally protected freedom of expression. The Act's vagueness is also likely to lead to enforcement by law enforcement officials on an unfair, subjective, and *ad hoc* basis. Because many of the Act's terms have no clear meaning, the Act will restrict a far broader range of video games than even the State claims it is seeking to regulate, because manufacturers, distributors, and importers likely will respond to the uncertainty and fear of penalties by labeling a much broader category of video games. As a result, Plaintiffs' members' protected expression will not reach willing recipients.

62. For each of the reasons set forth above, and others, the Act is unconstitutional under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as well as the First Amendment to the United States Constitution, as applied to the State of California by the Due Process Clause of the Fourteenth Amendment. The Act would cause Plaintiffs and their

members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

## COUNT III

### (Fourteenth Amendment—Equal Protection)

63. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 62 as if fully set forth herein.

64. The Act regulates and restricts under the threat of substantial penalties certain works of expression presented through the medium of video games. These same regulations, restrictions, and penalties do not apply to other works of expression containing the same or similar content, but communicated in other media, including, by way of example only, cable television, broadcast television, movies, books, magazines, and the like. Indeed, many of these other media—which compete with video games for consumers—contain expression that is based on video games that could fall within the prohibitions of the Act. Likewise, video games that could fall within the Act's prohibitions may themselves be based on similar speech in other, unregulated media.

65. The Act arbitrarily and irrationally would establish a legislative scheme of classifications that burden fundamental rights and that are not closely related to any compelling state interest.

66. For the foregoing reasons, and others, the Act is unconstitutional under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Act would cause Plaintiffs and their members to be subjected to the deprivation of rights, privileges, and immunities secured to them by the Constitution and laws of the United States. The Act thus constitutes a deprivation of rights actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that this Court enter a judgment in Plaintiffs' favor and against Defendants as follows:

Complaint for Declaratory and Injunctive Relief

(a) That this Court issue a declaratory judgment that the Act is void and of no force and effect;

(b) That this Court issue a preliminary injunction and a permanent injunction against Defendants enjoining them from enforcing, or directing the enforcement of, the Act in any respect;

(c) That Plaintiffs be awarded their attorneys' fees under 42 U.S.C. § 1988;

(d) That Plaintiffs be awarded their costs herein; and

(e) That this Court order such other general and equitable relief as it deems fit and proper.

(d) That Plaintiffs be awarded their costs herein; and

(e) That this Court order such other general and equitable relief as it deems fit and proper.

Respectfully submitted.

DATED: October 17, 2005.

GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR.
H. MARK LYON
ETHAN D. DETTMER

By: _____
Theodore J. Boutrous, Jr.

JENNER & BLOCK LLP
PAUL M. SMITH
KATHERINE A. FALLOW
AMY L. TENNEY
601 13th Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Attorneys for Plaintiffs
VIDEO SOFTWARE DEALERS ASSOCIATION
and ENTERTAINMENT SOFTWARE ASSOCIATION

Complaint for Declaratory and Injunctive Relief