EXHIBIT 4

```
                                                       AB 1179
                                                       Page  1


     CONCURRENCE IN SENATE AMENDMENTS
     AB 1179 (Yee)
     As Amended September 2, 2005
     Majority vote

      ----------------------------------------------------------------
     |ASSEMBLY:  |       |(May 5, 2005) |SENATE: |22-9 |(September 8, |
     |           |       |              |        |     |2005)         |
      ----------------------------------------------------------------
                (vote not relevant)

     Original Committee Reference:    HUM. S.

      SUMMARY  :  Prohibits the sale or rental of violent video games to
     minors.  Specifically,  this bill  :

     1)Expresses the Legislature's findings that exposing minors to
       depictions of violence in video games makes those minors more
       likely to experience feelings of aggression, to experience a
       reduction of activity in the frontal lobes of the brain, and
       to exhibit violent antisocial or aggressive behavior.

     2)Declares that the state has a compelling interest in
       preventing violent, aggressive, and antisocial behavior, and
       in preventing psychological or neurological harm to minors who
       play violent video games.

     3)Prohibits the sale or rental of violent video games to minors,
       defined as persons who are under 18 years of age, and requires
       each violent video game distributed in California to be
       labeled with a solid white 18 outlined in black.

     4)Defines "violent video game" as a video game in which the
       range of options available to a player includes killing,
       maiming, dismembering, or sexually assaulting an image of a
       human being, if those acts are depicted in the game in a
       manner that does either of the following:

       a)   A reasonable person, considering the game as a whole,
            would find it appeals to a deviant or morbid interest in
            minors;  it is patently offensive to prevailing standards
            in the community as to what is suitable to minors; and it
            causes the game as a whole to lack serious literary,
            artistic, political, or scientific value for minors; or,
```

```
                                                       AB 1179
                                                       Page  2

       b)   Enables a player to virtually inflict serious injury
            upon human beings or characters with substantially human
            characteristics in a manner which is especially, heinous,
            cruel or depraved in that it involves torture or serious
```

physical abuse to the victim. Defines the terms: heinous, cruel, depraved, torture, and serious physical abuse; and lists pertinent factors to consider in determining whether the violence is especially heinous, cruel, or depraved.

5) Provides that violation of the title may be prosecuted by any city attorney, county counsel, or district attorney, and may result in fines up to $1,000. It shall be an affirmative defense that the defendant reasonably relied on evidence that the purchaser was not a minor or that the manufacturer failed to label a violent video game as required.

6) Clarifies that the section does not apply if the violent video game is sold or rented to a minor by a minor's parents, grandparent, aunt, uncle, or legal guardian.

The Senate amendments delete the contents of this bill and insert provisions from AB 450 (YEE) described above.

EXISTING LAW :

1) Prohibits the sale, lease, rental, or provision of any video game intended for use by any person less than 18, which contains any commercial advertisement for alcohol or tobacco products in the design, presentation, packaging or advertisement of the video game.

2) Requires every video game retailer to provide consumers with information about the video game rating system, including posting a sign in a prominent area.

3) Prohibits the sale or distribution of harmful matter to minors; "harmful matter" means matter, taken as a whole, which to the average person, applying contemporary statewide standards, appeals to the prurient interest; and depicts or describes in a patently offensive way sexual conduct; and lacks serious literary, artistic, political, or scientific value for minors.

AS PASSED BY THE ASSEMBLY , this bill dealt with community care facilities.

AB 1179
Page  3

FISCAL EFFECT :    None

COMMENTS  :   This bill is sponsored by the American Academy of Pediatrics, Common Sense Media, and Girl Scout Councils of California. According to the bill's sponsors, "This legislation is necessary because:  1) children are playing violent video games; 2) violent video games have been proven to be harmful to children's physical, mental and emotional well being; and 3) children currently have free access to purchase or rent violent, 'M-rated' games that are not recommended for their age level."

The sponsors state that the best selling video games glorify and reward players for committing heinous acts of crime and violence. The National Institute on Media and the Family

reported that 87% of boys play M-rated games and 78% list an M-rated game among their favorites. Proponents of this bill argue that the current voluntary rating system is not effective. They cite to an undercover study done by the Federal Trade Commission (FTC) in 2003 in which 69% of the unaccompanied 13 to 16-year-olds purchased M-rated games.

Opponents of this bill argue that legislation is unnecessary. Entertainment Software Association (ESA) contends that it is working with dealers and retailers across the country to ensure that retailers have information about the Entertainment Software Rating Bureau (ESRB) and enforce the ESRB ratings. Under the voluntary system, retailers are not supposed to sell games rated "Mature" by ESRB to children under age 17.

Opponents of this bill also argue that it is unnecessary because most video games do not contain violence. They contend that people over 18 are the primary purchasers of computer and console games, and that parents are involved in the purchase of games more than 80% of the time. California Retailer's Association argues that this bill would be too difficult for retailers to implement. Opponents further argue that this bill is unconstitutional because it regulates protected speech in violation of the First Amendment. They caution that taxpayers would be liable for a plaintiff's court costs and attorney's fees in the event of a successful challenge of an enactment of the legislation.

The First Amendment protects the freedom of speech, which includes entertainment as well as political and ideological

AB 1179
Page 4

speech. ( Shad v. Borough of Mount Ephraim , 452 U.S. 61, 65 (1981).) Courts have repeatedly held that video games are considered to be "speech" for First Amendment purposes. (See, Interactive Digital Software Assoc. v. St. Louis County, 329 F.3d 954 (8th Cir. 2003); American Amusement Machine Assoc. v. Kendrick , 244 F.3d 572 (7th Cir. 2001).)

Obscenity is one of the few categories of speech which has historically been unprotected. ( Miller v. California , 413 U.S. 15 (1973).) The United States (U.S.) Supreme Court has defined "obscenity" as sexually-explicit material. ( Id. , at 19, n. 2.) This bill uses language very similar to the Supreme Court's definition of "obscenity." Thus far courts have declined to expand the definition of obscenity to patently graphic violence. ( Video Software Dealers Assoc. v. Maleng , 325 F. Supp. 2d 1185 (Wash. Dist. Ct. 2004).)

This bill does not seek to restrict all violent video games, only the sale of the most heinously violent games to youth under 18. Although courts have recognized that minors have First Amendment rights, they have also acknowledged that those rights are not always subject to the same protections as adults' rights.

Generally, an attempt to regulate the content of protected forms of speech must be necessary to serve a compelling state

interest, and the regulation must be narrowly tailored to achieve that interest. ( Republican Party of Minn. v. White , 536 U.S. 765, 774-75 (2002).) The legislative intent section of this bill posits that the state has a compelling interest in preventing violent, aggressive, and antisocial behavior, and in preventing psychological or neurological harm to minors who play violent video games. Courts have repeatedly recognized that a state has a legitimate and compelling state interest in safeguarding both the physical and psychological well-being of minors. ( Sable Comm., Inc. v. FCC , 492 U.S. 115 (1989).)

Proponents of this bill have presented research and several news articles linking video games and violence. Opponents of this bill argue that other studies indicate that youth violence is caused by a number of factors with the main culprits being drugs, guns and gangs. Courts have found that studies do not support that video games cause individuals to commit violent acts. (See, AAMA , 244 F.3d 572.)

AB 1179
Page 5

Proponents of this bill present professional testimony and studies to support that violent video games have a psychological impact on youth, in particular increased aggression. The sponsors summarize the research as concluding that teens are more impressionable than previously thought because they are still wiring their brains' circuits for self control, responsibility, and relationships. The sponsors state that dozens of studies conclude that playing violent games leads to increased physiological arousal, increased aggressive thoughts, increased aggressive feelings, increased aggressive behaviors, and decreased pro-social or helping behaviors.

Courts in other jurisdictions have struck down regulations attempting to limit the sale of violent video games to youth because of a lack of evidence to support that violent video games are psychologically harmful. ( Interactive , 329 F.3d at 958.) Proponents of this bill seem to have presented significantly more evidence of video games' negative psychological impact on children than in those previous cases in which the courts found the evidence to be lacking.

Other attempted regulations have failed because the research did not support the purpose of the law. ( Video Software , 325 F. Supp. 2d at 1188 no showing that banning video games would lead to a decrease in actual violence against law enforcement officers.) The sponsors of this bill have presented evidence directly related to the desired outcome: the research presented supports that violent video games lead to increased aggression and violence in youth. Thus, regulating the sale of such games appears necessary for the stated interest of "preventing violence, aggressive, and antisocial behavior, and in preventing psychological or neurological harm to minors."

Opponents argue there is no showing that violent video games have a greater impact on youth than other forms of media. Proponents counter that studies support that video games are more harmful than other forms of violent media because there is

an increased amount of violence, the violence is interactive (especially in the first-person games), and the video games incorporate techniques traditionally used in education, such as participation, repetition and reward.

Finally, any regulations must be narrowly tailored to fulfill the state's compelling state interest.  Unlike regulations which have failed in other states, this bill seeks to restrict only

AB 1179
Page  6

the most extreme depictions of violence against humans. ( Compare , Video , 325 Fed. Supp. 2d at 1189-1190.)  The language used in this bill regulates the sale of only those games that contain the most heinous, cruel or depraved acts of violence. It also is limited to those games which, taken as a whole, lack any redeeming social, literary, artistic, political, or scientific values, which is consistent with the Supreme Court's obscenity definitions and has survived vagueness challenges.

Courts have rejected many attempts to regulate violence because the regulations contained vague language.  This bill specifically defines the terms heinous, cruel, depraved, torture, and serious physical abuse; and lists pertinent factors to consider in determining whether the violence is especially heinous, cruel, or depraved.  The term "heinous, cruel, or depraved" is used in federal law to determine if an aggravating factor exists in a crime so as to warrant the death penalty. (18 U.S.C. Section 3592(c)(6).)  This bill incorporates the definitions used in the federal criminal jury instructions for this consideration.  In the context of death penalty challenges, the term "heinous, cruel, or depraved" has withstood the challenge of being unconstitutionally vague because it includes the accompanying definitions.  (See, e.g., United States v. Jones, 132 F.3d 232 (5th Cir. 1998), citing Maynard v. Cartwright, 486 U.S. 356 (1988) . )

Analysis Prepared by :    Elizabeth Linton / JUD. / (916) 319-2334

FN: 0013164