GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS, JR., SBN 132099
H. MARK LYON, SBN 162061
ETHAN D. DETTMER, SBN 196046
1881 Page Mill Road
Palo Alto, California 94304
Telephone: (650) 849-5300
Facsimile: (650) 849-5333

JENNER & BLOCK LLP
PAUL M. SMITH (admitted *pro hac vice*)
KATHERINE A. FALLOW (admitted *pro hac vice*)
MATTHEW S. HELLMAN (admitted *pro hac vice*)
601 13th Street, N.W., Suite 1200
Washington, D.C. 20005
Telephone: (202) 639-6000
Facsimile: (202) 639-6066

Attorneys for Plaintiffs
VIDEO SOFTWARE DEALERS ASSOCIATION
and ENTERTAINMENT SOFTWARE ASSOCIATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIDEO SOFTWARE DEALERS ASSOCIATION and ENTERTAINMENT SOFTWARE ASSOCIATION, <br><br> Plaintiffs, <br><br> vs. <br><br> ARNOLD SCHWARZENEGGER, in his official capacity as Governor of the State of California; BILL LOCKYER, in his official capacity as Attorney General of the State of California; GEORGE KENNEDY, in his official capacity as Santa Clara County District Attorney, RICHARD DOYLE, in his official capacity as City Attorney for the City of San Jose, and ANN MILLER RAVEL, in her official capacity as County Counsel for the County of Santa Clara, <br><br> Defendants. | CASE NO. C 05-4188 RMW (RS) <br><br> PLAINTIFFS' RESPONSE TO GOVERNOR AND ATTORNEY GENERAL'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT |

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

Dockets.Justia.com

1

2

# TABLE OF CONTENTS

3

Page

4

INTRODUCTION ................................................................................................. 1

5

I.     THE ACT FAILS STRICT SCRUTINY ................................................... 2

6

A.     No Compelling Interest Underlies The Act ..................................... 3

7

B.     The Act Is Not Supported by Substantial Evidence......................... 7

8

C.     The Act Does Not Materially Advance Its Aims, Is Not
        Narrowly Tailored, And Ignores Less Restrictive Alternatives...................... 11

9

10

II.    THE ACT IS UNCONSTITUTIONALLY VAGUE.................................. 14

III.   THE ACT'S LABELING REQUIREMENTS ARE
       UNCONSTITUTIONAL ........................................................................... 17

11

12

IV.    THE ACT VIOLATES THE EQUAL PROTECTION CLAUSE............................. 18

13

CONCLUSION................................................................................................... 19

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                          Case No. C 05-4188 RMW (RS)

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

*American Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) ..................... 2, 5, 8, 12

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) ........................................................ 3

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ..................................................................... 3

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188 (9th Cir. 1989) .................................. 4

*Entertainment Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051 (N.D. Ill. 2005) ............... passim

*Entertainment Software Ass'n v. Granholm*, No. 05-73634, --- F. Supp. 2d ---, 2006 WL 901711 (E.D. Mich, Mar. 31, 2006) ......................................................................... passim

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ................................................. 5, 13

*FCC v. Pacifica Foundation*, 438 U.S. 726 (1978) ........................................................ 6

*Florida Star v. BJF*, 491 U.S. 524 (1989) ..................................................................... 12

*Ginsberg v. New York*, 390 U.S. 629 (1968) ................................................................. 6, 16

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ....................................................... 14, 17

*Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003) ................ 2, 6, 7

*Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676 (1968) ....................................... 14

*Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397 (6th Cir. 1999) ................................................................................ 18

*McConnell v. Federal Election Comm'n*, 540 U.S. 93 (2003) ........................................... 5

*Pacific Gas & Electric Co. v. Pub. Utils. Comm'n of California*, 475 U.S. 1 (1986) ................... 17

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) ............................................................ 2

*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988)................... 17

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994) ................................................... 7

*United States v. Jones*, 132 F.3d 232 (5th Cir. 1998); *aff'd*, 527 U.S. 373 (1999) ............................ 15

*Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004).......... 2, 9, 16, 17

ii

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                        Case No. C 05-4188 RMW (RS)

**Table of Authorities**
**(Continued)**

Page(s)

*Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034 (N.D. Cal. 2005)............ 5, 9

*Video Software Dealers Ass'n v. Webster*, 968 F.2d 684 (8th Cir. 1992)........................................... 16

**STATUTES**

Cal. Civ. Code § 1746 ..................................................................................................................... 1, 3

iii

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

## INTRODUCTION

Plaintiffs have already explained in their motion for summary judgment that Cal. Civil Code § 1746 (2005) (the "Act"), violates the First and Fourteenth Amendments to the United States Constitution and should be permanently enjoined.  The Governor and Attorney General ("the State") have opposed Plaintiffs' motion and has also filed a cross-motion arguing that they are entitled to summary judgment.  The State's arguments are meritless.  Because the Act restricts fully protected speech, it is presumptively unconstitutional and the *State* carries the burden of satisfying the most demanding First Amendment scrutiny.  The State has wholly failed to carry its burden.  Therefore, Plaintiffs are entitled to summary judgment and Defendants' cross-motion must be denied.

The State's arguments notwithstanding, the following points are clear:

- Strict scrutiny applies to the Act, which restricts expression fully protected by the First Amendment.  The State therefore bears the burden of demonstrating on the basis of substantial evidence that the Act is necessary to support a compelling interest, that it materially advances that interest, and that it is narrowly tailored.

- The Act serves no compelling purpose.  The State does not – and cannot – satisfy the *Brandenburg* standard for restricting speech to prevent violence.  Nor can the State justify a restriction on protected speech by cloaking it in the mantle of paternalism.

- No substantial evidence supports the Act.  The Legislature relied on evidence that has been rejected as insubstantial by every court to have considered it.  The Legislature also ignored a substantial body of research contradicting the conclusion that "violent" video games are harmful.  This one-sided reliance on only that evidence which supports the State's viewpoint cannot establish substantial evidence.

- Because the Act is not narrowly tailored, and is in fact unconstitutionally vague, it will create a chilling effect as retailers and distributors will not know which games will subject them to criminal and civil liability.

- Because the Act's labeling provisions compel game creators and retailers to carry a stigmatizing message with which they disagree, those provisions are subject to and defeated by strict scrutiny.

As this Court is aware, every other attempt to restrict "violent" video games has been invalidated as violating the First Amendment.  *Entertainment Software Ass'n v. Blagojevich*, 404 F.

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment

Case No. C 05-4188 RMW (RS)

Supp. 2d 1051 (N.D. Ill. 2005) ("*Blagojevich*"); *Entertainment Software Ass'n v. Granholm*, No. 05-73634, --- F. Supp. 2d ---, 2006 WL 901711 (E.D. Mich, Mar. 31, 2006); *Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003) ("*IDSA*"); *American Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) ("*AAMA*"); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004) ("*VSDA*").  Just recently, the Michigan district court joined the Illinois court in invalidating laws similar to California's.  This case is no different from all of the others: the Act's rationales are equally flawed; the evidence supporting the Act is equally nonexistent; and the Act's chilling effect is equally pernicious.  Because the law is clear and the material facts are not in dispute, Plaintiffs are entitled to summary judgment in their favor.[1]

## I.    THE ACT FAILS STRICT SCRUTINY.

As Plaintiffs' motion for summary judgment explained, because the Act restricts protected expression on the basis of its content, it is subject to strict scrutiny and presumptively invalid.  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).  The State does not seriously dispute this standard, but asserts that the Act satisfies strict scrutiny – despite failing to cite to a *single* case in which the courts have upheld a content-based law under strict scrutiny.  Contrary to the State's contentions, the Act fails each requirement of strict scrutiny: it lacks a compelling interest supported by substantial evidence, it fails to materially advance its goals, and it is not narrowly tailored.

---

[1] Even if this Court were to conclude that Plaintiffs' motion for summary judgment is premature, the State's claim that *it* deserves summary judgment cannot be seriously credited.  The evidence submitted by the State has consistently been rejected by courts as insufficient to uphold legislation restricting video games, and it is thus wholly unsuited as a basis to grant summary judgment for the State.  In contrast, Plaintiffs' own experts have been found credible and persuasive in similar cases.  *See Blagojevich*, 404 F. Supp. 2d at 1067-68.  At a minimum, if this Court is not prepared to enter summary judgment for Plaintiffs, it should set the case for trial rather than award summary judgment to the State.

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

### A.  No Compelling Interest Underlies The Act.

The law is clear that no compelling interest underlies the Act's ban on the purchase or rental of "violent" video games by minors.  The State itself recognizes that "[e]xisting precedent recognizes that parents, not society, bear the primary obligation of determining what is, and what is not, appropriate material to [sic] for their children."  St. Mot. Sum. J. at 5.  Nevertheless, the State contends that it has a compelling interest in banning minors from purchasing or renting "violent" video games regardless of their parents' wishes.  This position has no merit as a matter of logic or of law.

*First*, as Plaintiffs' motion for summary judgment explained, Pls.' Mot. Sum. J. at 6, despite the State's efforts in this litigation to obscure the State's purported interests in restricting video games, the text of the Act, as well as the vast majority of the studies considered in enacting it, show that the Legislature was primarily concerned with preventing minors from acting violently.  *See* Act § 1(a), (b).  Yet the State does not begin to show that it can meet the standard set in *Brandenburg v. Ohio*, 395 U.S. 444 (1969), the legal test that courts have employed to strike down similar "violent" video games laws justified on the same grounds as California's.  *E.g.*, *Blagojevich*, 404 F. Supp. 2d at 1073; *Granholm*, 2006 WL 901711, at *4.  *Brandenburg* requires the government to prove that the targeted expression "is directed to *inciting* or producing the *imminent* lawless action and is *likely* to incite or produce such action."  *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) (quoting *Brandenburg*, 395 U.S. at 447) (emphasis added).  There is no conceivable way for the State to make this showing.  No evidence suggests that video games are intended to incite violence, nor could anyone think that video games, played by millions daily, are "likely" to produce "imminent" violence.

Although the State's brief lacks a single citation to *Brandenburg*, it is strewn with passages demonstrating that *Brandenburg* provides the appropriate test.  While the State's evidence is

3

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

woefully lacking, there can be no doubt that it is almost entirely concerned with demonstrating a link

between "violent" video games and increased aggression.  For example, the State touts the findings of

Dr. Craig Anderson, who reports an "updated meta-analysis reveal[ing] that exposure to violent video

games is significantly linked to increases in *aggressive behavior, aggressive cognition, aggressive*

*affect*, cardiovascular arousal, and to decreases in helping behavior."  St. Mot. Sum. J. at 7 (emphasis

added).  The brief goes on to discuss such supposed findings as "adolescents who expose themselves

to greater amounts of video game violence were more hostile" and claims that the "empirical

evidence" regarding whether exposure to "video games leads to an increase in aggressive

behavior . . . has become overwhelming."  *Id.* at 8, 9.  Even when the State appears to be citing

evidence concerned with a different harm, such as the relationship between video games and

"empathy," it cites supposed findings that there is a "relationship between lower empathy and social

maladjustment and aggression in youth."  *Id.* at 9.

      In short, the State cannot have it both ways.  It repeatedly cites sensational findings

supposedly linking "violent" video games to increased aggression and then insists that the hornbook

rule of *Brandenburg* does not apply.  But as the other "violent" video game cases demonstrate, there

is no "video game" exception to *Brandenburg*.  *Blagojevich*, 404 F. Supp. 2d at 1073; *Granholm*,

2006 WL 901711; *James*, 300 F.3d at 689.  Instead, *Brandenburg* applies in this area, as it does in

every instance in which the State claims the right to restrict protected expression on the ground that it

is too dangerous to be allowed.  *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1199 (9th Cir.

1989) (efforts to restrict speech based on its "tendency to cause others to engage in undesirable acts"

must meet the *Brandenburg* test).  Thus, to the extent the State relies on evidence concerning

increased aggression, it must be held to the *Brandenburg* standard and show that video games are

intended to and likely to cause imminent violence.  Because no evidence in the record supports this

showing, the Act must be struck down under *Brandenburg*.

4

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

*Second*, even if *Brandenburg* does not dispose of the State's case, the State cannot defend the Act on the basis of a purported compelling interest in preventing children from becoming "antisocial" or thinking certain thoughts. The problem once again is that the purported justification cannot, in principle, justify a restriction on expression. The court in *Blagojevich* considered and soundly rejected the very same claim of a compelling interest:

> Defendants also contend that [Illinois's violent video game act] serves a compelling state interest in preventing developmental or psychological harm to minors. Again, this is a legitimate societal and parental concern. But it does not provide a basis for restricting expression protected by the First Amendment. In this country, the State lacks the authority to ban protected speech on the ground that it affects the listener's or observer's thoughts and attitudes. "The government 'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.'" *Free Speech Coalition*, 535 U.S. at 253, (quoting *Stanley v. Georgia*, 394 U.S. 557, 566 (1969)).

*Blagojevich*, 404 F. Supp. 2d at 1074. In sum, while protecting minors from harm may be a substantial state interest in the abstract, it cannot justify efforts to program how minors think by controlling the expression they receive. *See Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034, 1045 (N.D. Cal. 2005) (describing Defendants' theory that the State has free rein to restrict minors' access to games about "embezzling" and "shoplifting," and noting that "[n]o court has previously endorsed such a limited view of minors' First Amendment rights").

The citations marshaled by the State are not to the contrary. As a baseline rule, First Amendment limitations on governmental action are in general "no less applicable when [the] government seeks to control the flow of information to minors." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213-214 (1975); *see McConnell v. Federal Election Comm'n*, 540 U.S. 93, 231 (2003) ("Minors enjoy the protection of the First Amendment."). Preserving children's First Amendment rights is "not merely a matter of pressing the First Amendment to a dryly logical extreme. . . . People are unlikely to become well-functioning, independent-minded adults, and responsible citizens if they are raised in an intellectual bubble." *AAMA*, 244 F.3d at 576-77; *see also Schwarzenegger*, 401 F.

5

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

Supp. 2d at 1046 ("It is uncertain that even if a causal link exists between violent video games and violent behavior, the First Amendment allows a state to restrict access to violent video games, even for those under eighteen years of age.").

There are very limited exceptions to the principle that children enjoy the full measure of the First Amendment's protection. Although the State invokes *Ginsberg v. New York*, 390 U.S. 629 (1968), to justify a supposed interest in limiting what expressive materials minors may purchase or rent, St. Mot. Sum. J. at 5, that case involved *sexually* expressive materials that were deemed obscene for minors, and thus unprotected by the First Amendment. *Ginsberg*, 390 U.S. at 638-39. Thus, the *Ginsberg* doctrine does not reach protected, non-obscene expression and, correspondingly, the State cannot justify interference with protected expression by looking to cases that involved regulable sexual expression. *See IDSA*, 329 F.3d at 959-60 ("Nowhere in *Ginsberg* (or any other case that we can find, for that matter) does the Supreme Court suggest that the government's role in helping parents to be the guardians of their children's well-being is an unbridled license to governments to regulate what minors read and view.").

The State's citation to *FCC v. Pacifica Foundation*, 438 U.S. 726 (1978), is likewise inapposite. St. Mot. Sum. J. at 4, 6. Like *Ginsberg*, *Pacifica* is another case in which the Court did not apply strict scrutiny. *Pacifica*, 438 U.S. at 748. Again, the State cannot look to cases that did not purport to define a "compelling interest" in order to prove such an interest exists here. Moreover, any language in *Pacifica* about protecting children turned entirely on the peculiarly invasive aspect of the broadcast medium at issue in that case. Unlike video games which are rented or purchased outside the home, the speech in *Pacifica* was "material presented over the airwaves [that] confronts the citizen, not only in public, but also in the privacy of the home." *Id.* Thus, "[b]ecause the broadcast audience is constantly tuning in and out, prior warnings cannot completely protect the listener or viewer from unexpected program content." *Id.* Even if *Pacifica*'s limitations on "indecent" speech

6

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

were theoretically relevant to the "violent" video games covered by the Act, the concerns about the "captive audience" are not present here. As *Blagojevich* found, the evidence demonstrates that the overwhelming majority of parents are involved in the purchase of video games by minors. *Blagojevich*, 404 F. Supp. 2d at 1075 ("[T]he FTC has found that seventy percent of parents report being involved with selecting their children's video games, and eighty-three percent purchase video games themselves or with their children.").

Ultimately, the State asks this Court to approve a wide-reaching and heretofore unrecognized compelling interest in limiting the access of minors to fully protected speech. There is no dispute in this proceeding that the Act regulates protected speech. No case has ever held that the State can ban access to such speech simply because it purportedly will affect how the listener thinks and behaves. This is not even a legitimate interest, let alone a compelling one, and the State cannot save it by appealing to a need to protect children. "To put it another way, 'the government cannot silence protected speech by wrapping itself in the cloak of parental authority.'" *Blagojevich*, 404 F. Supp. 2d at 1076 (quoting *IDSA*, 329 F.3d at 960). This Court should join *Blagojevich* and the other courts that have reached the same conclusion.

## B. The Act Is Not Supported by Substantial Evidence.

Even if the State had put forth a compelling interest to support the Act (and it has not), the State's evidence falls woefully short of satisfying its obligation under strict scrutiny to present "substantial evidence" demonstrating the harm it seeks to combat. *Turner Broad. Sys.*, *Inc. v. FCC*, 512 U.S. 622, 665 (1994). The State invokes the very same biased subset of evidence that has been found wanting by *every* court to have considered it. As a result, the State is not entitled to summary judgment upholding the Act.

At the outset, it is suspect that the State would claim that substantial evidence supports the Act where the legislative record indicates that the Legislature failed to consider a *single* piece of the

7

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

voluminous evidence calling into question whether "violent" video games are harmful to minors. *Compare* "Violent Video Game Bibliography," State Opp. to Prelim. Inj., App. A at A14-18 *with* Pls.' Mot. Sum. J. at 14 (describing contrary research ignored by Legislature).  Although the State's brief claims that the "Legislature considered the very best evidence available" and asks this Court to defer to the authority of the "legislative and executive branches to consider the evidence presented and make the final determination," St. Mot. Sum. J. at 13-14, there is no ground for deference here where the Legislature has utterly abdicated its duty "to consider the evidence presented" by looking only at the evidence that purports to support the Act.  Goldstein Decl. ¶ 7 ("[The State has] ignor[ed] studies with null or inconsistent results"); Williams Decl. ¶ 39 ("It appears that [the State has] only included the papers that they might interpret to support the law.").  The State can hardly be said to have drawn "reasonable inferences based on substantial evidence" when it is has looked only at a biased subset of materials.  *See Blagojevich*, 404 F. Supp. 2d at 1063 (claim of substantial evidence undermined where "the legislative record does not indicate that the Illinois General Assembly considered any of the evidence that showed no relationship or a negative relationship between violent video game play and increases in aggressive thoughts and behavior").

But even looking at the limited evidence that the Legislature *did* consider, it is clear that the State has failed to carry its burden of presenting substantial evidence.  Rather, the State has put forward the very same evidence, focusing on the work of Dr. Anderson, which has been rejected by every court to have considered it.  It defies logic for the State to claim that this discredited evidence now supports summary judgment in its favor.  Certainly, the State is mistaken when it repeatedly suggests, St. Mot. Sum. J. at 7, 11, that the inadequacies in Dr. Anderson's research were limited to the first round of cases to find it unpersuasive.  *E.g.*, *AAMA*, 244 F.3d at 578-79 ("[Dr. Anderson's] studies do not find that video games have ever caused anyone to commit a violent act, as opposed to feeling aggressive, or have caused the average level of violence to increase anywhere.").  There has

8

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

been no recent renaissance in social science studies linking "violent" video games and harm to

minors. To the contrary, Dr. Anderson's latest research has been found unpersuasive by two federal

courts in the last five months. *Blagojevich*, 404 F. Supp. 2d at 1063 ("[N]either Dr. Anderson's

testimony nor his research establish a solid causal link between violent video game exposure and

aggressive thinking and behavior."); *Granholm*, 2006 WL 901711, at *5 ("Dr. Anderson's studies

have not provided any evidence that the relationship between violent video games and aggressive

behavior exists."). And this Court recognized the potential weakness of his research when it entered

a preliminary injunction against the Act in December 2005. *Schwarzenegger*, 401 F. Supp. 2d at

1046 (citing Dr. Anderson's research and concluding that "this court anticipates that the defendants

here may face similar problems proving the California legislature made reasonable inferences based

on substantial evidence") (quotation marks omitted).[2]

    As Plaintiffs' motion for summary judgment recounted in detail, Dr. Anderson's work fails to

demonstrate either a substantial or a causal relationship between "violent" video games and

aggression: Dr. Anderson himself has conceded that any supposed effect of "violent" video games is

at most "incremental" and has admitted that "the vast majority of the kids . . . playing violent video

games right now… are going to grow up and be just fine." Pls.' Mot. Sum. J. at 11. *Blagojevich*

reviewed the very same Anderson studies that the State now seeks to rely on and found them sorely

wanting on a number of levels: in addition to finding that Dr. Anderson had not shown a causal

connection between "violent" video games and aggressive thoughts and behavior, the court also

found that "Dr. Anderson provided no evidence supporting the view that playing violent video games

---

[2] The State misreads the decision in *Maleng* when it claims that the court in that case "came to the same conclusion as the California Legislature" regarding the effect of "violent" video games. St. Mot. Sum. J. at 10. *Maleng* clearly found that "neither causation nor an increase in real-life aggression is proven by [the State's] studies" and struck down the video game regulation in question. *Maleng*, 325 F. Supp. 2d at 1188. That finding was not tied to the specific focus on aggression against law enforcement officers at issue in that case.

9

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

has a lasting effect on aggressive thoughts and behavior" or that the "purported relationship between violent video game exposure and aggressive thoughts or behavior is any greater than with other types of media violence, such as television or movies, or other factors that contribute to aggression, such as poverty." 404 F. Supp. 2d at 1063.

The State also claims to have substantial evidence justifying the Act based on brain activity research. St. Mot. Sum. J. at 7. This research, too, has been consistently rejected by courts—indeed, it has been given even less credence. *Blagojevich*, 404 F. Supp. 2d at 1074 ("[T]here is barely any evidence at all, let alone substantial evidence, showing that playing violent video games causes minors to experience a reduction of activity in the frontal lobes of the brain which is responsible for controlling behavior."); *Granholm*, 2006 WL 901711, at *5 (same). These courts have recognized that this research cannot possibly constitute substantial evidence in light of the fact that it "fails to distinguish between video games and other forms of media," *Granholm*, 2006 WL 901711, at *5, and the fact that a primary author of the research has admitted that it does not demonstrate causation. *Blagojevich*, 404 F. Supp. 2d at 1074; *see also* Pls.' Mot. Sum. J. at 13 (detailing flaws of brain activity research).

Similarly, the State cannot point to substantial evidence in the form of an article purporting to demonstrate a connection between "violent" video games and aggression in eighth and ninth graders. St. Mot. Sum. J. at 8 (citing Gentile, et al., *The Effects of Violent Video Game Habits on Adolescent Hostility, Aggressive Behaviors, and School Performance*). That unpublished study admits that it is "limited by its correlational nature [and that] [i]nferences about causal direction should be viewed with caution." Nor can the State claim that the Act is justified on the basis of statements from two professional groups. Those groups based their opinions on the same flawed studies that have not held up in any court. Williams Decl. ¶ 35. Moreover, the State has ignored the statements of other professional bodies who focus on the media social science issues that the Act implicates. *Id.* ¶¶ 35-

10

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

38 (noting that the International Communications Association and the Digital Games Research

Association had taken "wholly different stands").

Finally, the State's claim that it would be "irresponsible" to obtain evidence demonstrating a

clear causal link between "violent" video games and harm to minors is grossly mistaken.  The reason

every court has found the social science insufficient to support regulation is not that they have

imposed an unreasonable burden of proof, but rather that the State's evidence is riddled with caveats

and susceptible to alternative (and indeed more probable) explanations.  While the State implies that

its evidence is as strong as the correlative evidence employed in astronomy, St. Mot. Sum. J. at 13,

one must doubt the comparison when the leading proponent of the State's evidence admits that "the

vast majority of the kids . . . playing violent video games right now… are going to grow up and be

just fine."  Pls.' Mot. Sum. J. at 11.  Compounding the limitations of the State's evidence are the

numerous other studies that disprove the very connection the State claims exists.  The State can

hardly claim that it is "unethical" to require it to do more to carry its burden of proof when it has

ignored every study on the opposite side of the conclusion it strives to reach.  The State gets the First

Amendment backwards: rather than have it serve as a shield against restrictions on expression that the

majority finds unpopular, the State would wield it against a subset of expression without any

substantial evidence in support of its actions.  For all these reasons, Defendants have failed to carry

their burden of showing a compelling interest backed by substantial evidence, and judgment for

Plaintiffs should be entered.

### C.  The Act Does Not Materially Advance Its Aims, Is Not Narrowly Tailored, And Ignores Less Restrictive Alternatives.

Judgment for the Plaintiffs is also warranted for the independent reason that the Act fails the

other prongs of the strict scrutiny standard.  In its summary judgment motion, the State does not even

attempt to argue that the Act materially advances its aims, and nor could it.  Courts have repeatedly

found that laws that restrict access only to video games do not materially advance their stated

11

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

interests given that "[v]ideo games consist of 'a tiny fraction of the media violence to which American children are exposed.'"  *Granholm*, 2006 WL 901711, at *6 (quoting *AAMA*, 244 F.3d at 579).  As the *Granholm* court recently noted, "[i]t cannot be said that the Act materially advances these purported goals by preventing a minor from purchasing such video games as Resident Evil 4 or Doom 3, while they can still easily purchase the Resident Evil and Doom movies."  *Id.*  *Blagojevich* also found the "violent" video game statute in Illinois wanting in this regard and concluded that "the underinclusiveness of this statute—given that violent images appear more accessible to unaccompanied minors in other media— indicates that regulating violent video games is not really intended to serve the proffered purpose."  404 F. Supp. 2d at 1075 (citing *Florida Star v. BJF*, 491 U.S. 524, 540 (1989)).  Having failed even to argue that the statute materially advances its aims, the State has wholly failed to carry its burden on this point.

Nor can the Act be justified on the ground that it is narrowly tailored.  The State contends that the Act is narrowly tailored because video games are "uniquely interactive."  St. Mot. Sum J. at 14.  This statement is flatly refuted by Dr. Anderson himself, who has testified that the effects of exposure to "violent" television and video games are essentially the same.  Anderson Test., 11/15/05 Tr. at 278-80 (included in Exh. 1 to Pls' Mot. Sum. J.).  There is no basis to credit the State's unsubstantiated musings about the distinctive "interactive" nature of video games when the expert it relies on admits there is no meaningful difference between the effect of video games and television.  Nor does the State bolster its case by arguing that video games are different because they are "exemplary teachers."  St. Mot. Sum. J. at 15.  The fact that educational video games exist signifies that video games are more like other media, such as books and movies, not less.  The State also errs when it claims that the Act is narrow because it does not limit *adult* access to "violent" video games.  Leaving aside the fact that the Act restricts the speech of adults who create and sell games, and will have an indirect chilling effect on the First Amendment rights of adult customers, the State's

12

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                      Case No. C 05-4188 RMW (RS)

reasoning is based on the erroneous premise that a regulation is narrow if it only impinges upon the First Amendment rights of minors. The State cites no authority for that position, and to the contrary, as discussed above, minors have First Amendment rights that are generally commensurate with those of adults (except in circumstances not relevant here). *See supra* at 5 (citing *Erznoznik*).

Further, as Plaintiffs' motion for summary judgment explained, the Legislature itself was aware that there is no "fit" between the representations of violence the Act prohibits and the social science evidence on which the Legislature relied. As the California Senate Judiciary Committee Report observed in its analysis of the law's constitutionality, "[b]ecause there does not appear to be a direct correlation between the proposed limitations and the negative effects discussed in the studies relied upon by the [Act's] author, it is unclear that the proposed definition of 'violent video game' is narrowly tailored to address the state's compelling interests, rather than simply tailored for the sake of a more 'narrow' statute." Sen. Jud. Comm. Analysis at 11 (attached as Exh. 2 to Reply in Support of Pls.' Mot. Prelim. Inj.). The Act is surely not narrowly drawn when it restricts expression not shown to justify such restrictions.

With respect to the existence of less restrictive alternatives, the State relies on an FTC report and argues that the voluntary rating system is not inadequate. St. Mot. Sum. J. at 16-17. But the State misinterprets the FTC's findings, which, as *Blagojevich* found, actually support Plaintiffs' position. In the face of similar arguments by the State of Illinois, *Blagojevich* concluded that

> Defendants, however, fail to discuss two important facts. First, the FTC has found that seventy percent of parents report being involved with selecting their children's video games, and eighty- three percent purchase video games themselves or with their children . . . .Second, the FTC has found that other segments of the entertainment industry are even worse at ensuring that unaccompanied minors are unable to purchase explicit material.
>
> [T]he 2004 FTC study cited by defendants shows that eighty-one percent of unaccompanied teenagers could purchase R-rated DVDs, and eighty-three percent could purchase music with explicit lyrics – far more than were able to purchase M-rated video games.

13

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

404 F. Supp. 2d at 1075; FTC, Report to Congress: Marketing Violent Entertainment to Children (July 2004) at 20, 23-24, available at http://www.ftc.gov/05/2004/07 /040708 kidsviolencerpt.pdf. And findings just released by the FTC demonstrate that retailers have been doing an even better job in ensuring that unaccompanied minors do not buy M-rated games. *See* FTC, *Undercover Shop Finds Decrease in Sales of M-Rated Video Games to Children* (March 30, 2006), *available at* http://www.ftc.gov/opa/2006/03/videogameshop.htm. Thus, rather than presenting a special case for regulation, the FTC reports show that the video game rating system is performing just as well as, if not better than, the other rating systems.

The State also completely ignores the fact that many popular game consoles now come equipped with technological controls that enable parents to limit which games their children play. See Entertainment Software Association, Press Release (Nov. 28, 2005), All New Video Game Consoles to Include Parental Controls, available at http://www.theesa.com/archives /2005/11/all_new_ video_g.php . The State has not shown, and cannot show, that these parental controls are not a viable – and indeed much preferable – less restrictive alternative to serve the State's purported goals. The State has therefore failed to carry its burden in satisfying the third prong of the strict scrutiny test.

## II.    THE ACT IS UNCONSTITUTIONALLY VAGUE.

In addition to its fatal flaws under the First Amendment, the Act is independently unconstitutional because its vague terms fail to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "This precision is no less a requirement when the regulation in question is aimed at protecting children." *Blagojevich*, 404 F. Supp. 2d at 1076-77 (citing *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 689 (1968)). The State's argument to the contrary is incorrect as a matter of law on a number of levels.

14

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

*First*, the State errs in claiming that there can be no vagueness problem with the Act because it applies only to games depicting violence against "an image of a human being." As Plaintiffs' motion for summary judgment explains, even assuming that the Act only applies where images of human beings are involved, the world of video games poses innumerably difficult questions of what constitutes a human being. Pls.' Mot. Sum. J. at 21. Video game characters that appear to be human beings may actually be zombies, aliens, gods, or some other fanciful creature, or might transform from humans to other beings and vice versa over the course of the game. Price Decl. ¶¶ 10-11 (attached as Exh. 2 to Pls' Mem. Sup. Prelim. Inj.). Examples of such ambiguous characters abound in the games submitted by Plaintiffs, including *Resident Evil*, *Jade Empire*, and *God of War*. Price Decl. ¶¶ 30-44; Lowenstein Decl. ¶ 19 (attached as Exh. 3 to Pls' Mem. Sup. Prelim. Inj.). That is why *Blagojevich* found the statute in Illinois vague even though it applied only to images of "human on human" violence. *Blagojevich*, 404 F. Supp. 2d at 1077.

*Second*, it is no defense of the Act to claim that it employs terms that have been found acceptable in the death penalty context. *See* St. Mot. Sum. J. at 19. The law may impose extra punishment on those who commit real crimes against real humans in a flagrant manner precisely because our common human experience gives us a benchmark to judge those actions. *See United States v. Jones*, 132 F.3d 232, 250 (5th Cir. 1998) (upholding "heinous, cruel, and depraved" formulation in the death penalty context because it has a "'common-sense core meaning'" that [a jury was] capable of understanding"), *aff'd*, 527 U.S. 373 (1999). But what benchmark or "common-sense core meaning" is there when the "victim" of the harm is at most an image of a human that cannot suffer in the way that an actual human being can? Nor does it save the Act to point to the fact that ESRB employs its own rating system to evaluate games. No vagueness issue arises with the ESRB ratings because they do not trigger civil penalties in the event of a misclassification.

15

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                                    Case No. C 05-4188 RMW (RS)

*Third*, the Act also employs an incoherent and unprecedented "harmful to minors" requirement, which has no intelligible meaning outside the context of sexual obscenity, *see Ginsberg v. New York*, 390 U.S. 629 (1968). It is simply not clear when a game might appeal to a "deviant or morbid interest." Act, § 1746(d)(1)(A)(i); *see Granholm*, 2006 WL 901711, at *7 (finding similar language unconstitutionally vague); *Video Software Dealers Ass'n v. Webster*, 968 F.2d 684, 690 (8th Cir. 1992) (affirming district court's conclusion that statute lacks requisite specificity because, *inter alia*, term "morbid" was not defined).

*Fourth*, even if the Act's terms were intelligible (and they are not), there would still be a fatal vagueness problem with the Act because the complexity and open-endedness of the games means video game distributors cannot know whether the games they distribute will run afoul of the Act. For example, the Act restricts games that enable "depraved" behavior by allowing the player to "relish[] the virtual killing." But there is no way to know in advance whether a player will "relish" the "virtual killing" a game allows. The Act puts retailers and distributors in the wholly untenable position of trying to guess which games might enable a purchaser to have such a reaction.

All of these factors lead to the conclusion that numerous other courts have reached in considering similar legislation: the Act is unconstitutionally vague. *Blagojevich*, 404 F. Supp. 2d at 1076-77; *Granholm*, 2006 WL 901711, at *7; *Maleng*, 325 F. Supp. 2d at 1191. The Act "leaves video game creators, manufacturers, and retailers guessing about whether their speech is subject to . . . sanctions." *Blagojevich*, 404 F. Supp. 2d at 1077. And this in turn will create a chilling effect as [n]ot only is a conscientious retail clerk (and her employer) likely to withhold from minors all games that could possibly fall within the broad scope of the Act, but authors and game designers will likely 'steer far wider of the unlawful zone . . . than if the boundaries of the forbidden area were clearly marked.'" *Maleng*, 325 F. Supp. 2d at 1191 (quoting *Grayned*, 408 U.S. at 109 (alteration in original)).

16

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment

Case No. C 05-4188 RMW (RS)

### III.    THE ACT'S LABELING REQUIREMENTS ARE UNCONSTITUTIONAL.

The State is incorrect to claim that the Act's labeling requirements are subject only to review under the commercial speech doctrines. St. Mot. Sum. J. at 21. To the contrary, the labeling requirements are a form of compelled speech, requiring game creators and distributors to carry a message with which they strongly disagree. Consequently, the labeling requirements are subject to, and defeated by, strict scrutiny. *Pacific Gas & Electric Co. v. Pub. Utils. Comm'n of California*, 475 U.S. 1 (1986). The State takes the implausible position that the labeling requirements are restrictions on commercial speech because they only apply to games "for retail sale" in California. Yet the fact that the Act's labeling requirements apply only to commercial transactions does not change the fact that they impose a message, indeed a stigmatizing message, on Plaintiffs. Under *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 797-98 (1988), this type of compelled message is treated under strict scrutiny, regardless of the fact that it arises in a commercial context.

The labeling requirements clearly fail strict scrutiny. The required label does not even purport to convey purely factual or noncontroversial information – "it tells parents and children nothing about the actual content of the games, and it creates the appearance that minors under eighteen are prohibited from playing such games." *Blagojevich*, 404 F. Supp. 2d at 1081. Instead, it is designed to force manufacturers and distributors to convey a stigmatizing message, "forc[ing] speakers to alter their speech to conform with an agenda [that] they do not set." PG&E, 475 U.S. at 9. This is plainly unconstitutional. Moreover, the labeling requirements are not narrowly tailored. They ignore the less restrictive alternative of self-regulation through the ESRB voluntary rating system. *See Riley*, 487 U.S. at 798-99 (law not narrowly tailored where potential donors could otherwise obtain information of which State sought to compel disclosure).

---

17

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

## IV.    THE ACT VIOLATES THE EQUAL PROTECTION CLAUSE.

Without much argument, the State contends that it is entitled to summary judgment on Plaintiffs' equal protection claim. St. Mot. Sum. J. at 24. Plaintiffs have not yet sought summary judgment on these claims, but the State's half-hearted arguments on these claims do not entitle them to summary judgment. First, with respect to equal protection, the State rehashes its argument in a single paragraph that video games are different than other media and therefore can be singled out for regulation by the State. *Id.* But for the reasons discussed above, *supra* at 12, no evidence supports the State's speculation about the supposed differences between video games and other media in terms of justifying greater regulation. To the contrary, Plaintiffs have already demonstrated that video games expression is protected in the same manner as other media, and that the Act singles out video game content for censorship. *See supra* Part I. When the State discriminates in a way that burdens fundamental rights – such as the First Amendment right to freedom of speech – the Equal Protection Clause requires that the State satisfy strict scrutiny. *See, e.g.*, *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 410 (6th Cir. 1999) ("A statute challenged on equal protection grounds will be subject to strict scrutiny when the statute . . . has an impact on a 'fundamental' right"). For the same reasons the State cannot justify the Act under the First Amendment, it fails to satisfy the Equal Protection Clause. The State has not offered any legitimate, let alone compelling, justification to restrict fundamental First Amendment rights of expression. The State's argument thus fails as a matter of law, and it is not entitled to summary judgment on this claim.

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment                    Case No. C 05-4188 RMW (RS)

1

**CONCLUSION**

2

For the foregoing reasons, Plaintiffs respectfully ask this Court to deny summary judgment to

3

the State and grant summary judgment in their favor and permanently enjoin the Act.

4

5

6

Respectfully submitted.

7

DATED:  April 19, 2006

8

GIBSON, DUNN & CRUTCHER LLP

9

THEODORE J. BOUTROUS, JR.
H. MARK LYON
ETHAN D. DETTMER

10

11

12

By:_____/s/_____
                    Theodore J. Boutrous, Jr.

13

14

JENNER & BLOCK LLP
PAUL M. SMITH (admitted *pro hac vice*)

15

KATHERINE A. FALLOW (admitted *pro hac vice*)
MATTHEW S. HELLMAN (admitted *pro hac vice*)

16

601 13th Street, N.W., Suite 1200
Washington, D.C. 20005

17

Telephone:  (202) 639-6000
Facsimile:  (202) 639-6066

18

Attorneys for Plaintiffs

19

VIDEO SOFTWARE DEALERS ASSOCIATION
and ENTERTAINMENT SOFTWARE ASSOCIATION

20

21

22

23

24

25

26

27

28

Plaintiffs' Response to Governor and
Attorney General's Notice of Motion
and Motion for Summary Judgment

Case No. C 05-4188 RMW (RS)