1  BILL LOCKYER
   Attorney General of the State of California
2  LOUIS R. MAURO
   Senior Assistant Attorney General
3  CHRISTOPHER E. KRUEGER
   Supervising Deputy Attorney General
4  SUSAN K. LEACH
   Deputy Attorney General
5  ZACKERY P. MORAZZINI, State Bar No. 204237
   Deputy Attorney General
6   1300 I Street, Suite 125
    P.O. Box 944255
7   Sacramento, CA 94244-2550
    Telephone: (916) 445-8226
8   Fax: (916) 324-5567
    Email: Zackery.Morazzini@doj.ca.gov
9
   Attorneys for Defendants Governor Arnold
10 Schwarzenegger and Attorney General Bill Lockyer

11                IN THE UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

| | |
|---|---|
| **VIDEO SOFTWARE DEALERS ASSOCIATION and ENTERTAINMENT SOFTWARE ASSOCIATION,**<br><br>Plaintiffs,<br><br>v.<br><br>**ARNOLD SCHWARZENEGGER, in his official capacity as Governor of the State of California; BILL LOCKYER, in his official capacity as Attorney General of the State of California; et al.,**<br><br>Defendants. | C 05 4188 RMW RS<br><br>**GOVERNOR AND ATTORNEY GENERAL'S REPLY TO PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing: May 12, 2006<br>Time: 9:00 a.m.<br>Courtroom: 6<br>Judge: The Honorable Ronald M. Whyte |

Defendants Governor Arnold Schwarzenegger and Attorney General Bill Lockyer (collectively the "State") respectfully submit the following in reply to Plaintiffs' Response to the Governor and Attorney General's Motion for Summary Judgment.

## INTRODUCTION

Plaintiffs essentially argue that the State has no legitimate interest in helping parents prevent children from becoming automatically aggressive, experiencing increased aggressive

State's Reply to Response to MSJ    *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

1

Dockets.Justia.com

1  thoughts and behavior, engaging in antisocial behavior, becoming desensitized to violence, and
2  performing poorly in school.  Plaintiffs' argument is facially absurd, and they cite no evidence to
3  support their theory that increased childhood aggression is not harmful.
4      Unlike Plaintiffs, the Legislature did not require a scientific explanation as to why increased
5  childhood aggression and its associated impacts are harmful.  Behaviorally, aggression can
6  manifest itself as an intent to hurt an object or another person as a means of obtaining a
7  particular end.  An aggressive child often antagonizes other children and animals, instigates
8  arguments or fights, uses aggression to attempt to resolve conflicts, engages in deceitful
9  behavior, and is often feared by other children.  Increasing childhood and adolescent aggression
10 is a serious issue, with entire medical specialties established to diagnose and treat the causes and
11 resulting behavioral problems.  It is irresponsible for Plaintiffs to claim that helping parents
12 combat increased childhood aggression is not a compelling, or even legitimate, state interest.

## ARGUMENT

### I.

**HELPING PARENTS PROTECT THE PHYSICAL AND PSYCHOLOGICAL WELL-BEING OF CHILDREN IS A COMPELLING STATE INTEREST.**

17    Despite Plaintiffs' argument to the contrary, it has been established by the Supreme Court
18 that "there is a compelling interest in protecting the physical and psychological well-being of
19 minors."  *Sable Communications of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989).  Instead of
20 accepting this established precedent, Plaintiffs attempt to convince this Court that the Legislature
21 is not really seeking to protect children, but is instead attempting to prevent children from
22 engaging in imminent lawlessness after playing violent video games.  This is simply a
23 transparent attempt to subject the Act to review under the standard set forth in *Brandenburg v.*
24 *Ohio*, 395 U.S. 444 (1969).
25    Plaintiffs' attempt fails because the Act is not intended to protect society from possible
26 illegal acts being committed by children, but is instead intended to protect the children
27 themselves from suffering the deleterious effects of playing violent video games.  The statute at
28 issue in *Brandenburg* was the Ohio Criminal Syndicalism statute which prohibited "advocat[ing]

State's Reply to Response to MSJ            *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
                                                                                          C 05 4188 RMW RS

2

. . . the duty, necessity, or propriety of crime, sabotage, violence, or unlawful methods of terrorism as a means of accomplishing industrial or political reform" and "voluntarily assembl[ing] with any society, group, or assemblage of persons formed to teach or advocate the doctrines of criminal syndicalism." *Brandenburg v. Ohio*, 395 U.S. 444, 444-445 (1969) (quoting Ohio Rev. Code Ann. § 2923.13). In contrast to the Act, the statute in *Brandenburg* sought to prohibit speech that advocated lawlessness. The Court held that, in order to survive judicial review, the statute must only prohibit speech that "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id*., at 447.

Here, the Act does not seek to regulate violent video games based upon a theory that such games advocate imminent lawlessness on the part of children. The Act is expressly aimed at protecting children from the harmful effects of the games themselves. The physical and psychological well-being of children is the concern of the Act. The Act expressly states, "(b) Even minors who do not commit acts of violence suffer psychological harm from prolonged exposure to violent video games. (c) The state has a compelling interest in preventing violent, aggressive, and antisocial behavior, and in preventing psychological or neurological harm to minors who play violent video games." Ch. 638, § 1 Stats. 2005 (AB 1179).

The Act's goal of helping parents protect the physical and psychological well-being of children is a compelling state interest. Increased aggression, antisocial behavior, desensitization to violence – each is harmful to the developing minds and personalities of children. It is beyond argument that it is not healthy for children to antagonize other children and animals, instigate arguments or fights, use aggression to attempt to resolve conflicts, and engage in deceitful behavior. The Legislature did not need a scientific explanation of these consequences. Because the Act seeks to serve a compelling state interest, it survives this prong of the strict scrutiny analysis.

## II.

**PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THE ACT IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.**

Plaintiffs have presented nothing to demonstrate that the Legislature's actions are not

State's Reply to Response to MSJ        *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

3

supported by substantial evidence. Plaintiffs claim that other courts have reviewed and rejected "the very same biased subset of evidence," but cite nothing that actually shows that other court reviewed the "very same evidence" as the Legislature. Pls.' Resp. Mot. Summ. J, 7:22-25. Plaintiffs even claim that the Legislature "failed to consider a *single* piece of the voluminous evidence calling into question whether 'violent' video games are harmful to minors." *Id*., at 7:28; 8:1-2. But again, Plaintiffs' claim is entirely unsupported. Plaintiffs have provided this Court with no evidence demonstrating that they have reviewed the entire legislative record of the Act. The State's submission of articles and research contained in the legislative record that support the Act in no way establishes an absence of opposing research in the legislative record. Instead of submitting every single document contained in legislative record, which would include the entire files of multiple committees on multiple versions of the bill (likely more than three thousand pages of material), the State chose to submit only material that supported the Act and its position. *See* Morazzini Decl., ¶ 2 ("I personally copied, or caused to have copied in my presence, materials relevant to the present proceedings . . . .").

Plaintiffs' apparent choice not to perform an independent review of the legislative record of the Act in no way establishes that the Legislature did not consider opposing research, and Plaintiffs' claim to the contrary is misleading at best. Indeed, Plaintiffs are specifically listed as opponents of the Act. *See* RJN, Ex. 1 (Senate Judiciary Committee Analysis), pp. 16-17. Apparently then, Plaintiffs did not provide the Legislature with any of the purported research they ask this Court to consider, and now argue that the Legislature failed to consider this research.

As set forth in the State's moving papers, the evidence considered by the Legislature overwhelmingly supports the Act. State's Mot. Summ. J., § 1. And importantly, nothing cited by Plaintiffs proves that playing violent video games does not harm children. Again, Plaintiffs' own expert, Professor Dimitri Williams, previously testified that "most experts would agree that we have established covariation" showing that with people who play more violent video games, some tend to exhibit greater aggression. Pls.' Ex. B to Fallow Dec., 130:4-14 (Nov. 14, 2005 trial transcripts from *E.S.A. v. Blagojevich*, Williams' direct). Professor Williams even admitted

State's Reply to Response to MSJ        *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

4

that his position is "not that these games do not lead to [increased aggression], only that [he has not] professionally been convinced of that yet." *Id.*, 175:2-25. Notably, Professor Williams testified that he is familiar with the work of Dr. Craig Anderson and "absolutely" considers him to be "an expert" in his field. *Id.*, 199:23-25; 200:1-3. Professor Williams himself admitted that Dr. Anderson's General Aggression Model is "the most cited theory in [the] literature" in the field. *Id.*, 200:4-13.

The solid research submitted by amicus curiae Common Sense Media ("CSM") fully supports the Act. *See* CSM's Opp. Pls.' Mot. Summ. J. CSM has provided this Court with declarations from six additional experts, including PhDs and medical doctors, who have conducted their own research and reviewed hundreds of research studies in this field. These additional experts have all come to the conclusion that the research demonstrating the harmful effects of playing violent video games is supported by prevailing scientific knowledge. *Ibid.*

The State has carried its burden by demonstrating that the Act is supported by substantial evidence. Nothing submitted by Plaintiffs legitimately disputes this conclusion. Therefore, the State is entitled to summary judgment in its favor.

## III.

**THE STATE HAS DEMONSTRATED THAT THE ACT IS NARROWLY TAILORED TO SERVE THE COMPELLING INTEREST THROUGH THE LEAST RESTRICTIVE MEANS.**

The best way to help parents ensure that their children do not have access to these video games without their knowledge is to provide, through threat of civil penalty, that retail store clerks must not sell these games to children. This self-evident point was apparently lost on Plaintiffs. Without the Act, children remain free to purchase video games that would be covered by the Act because there is no enforcement mechanism for the industry's self-imposed, ineffective[1/], voluntary rating system.

---

1. The FTC reports that the video game industry specifically markets M-rated games to children, and industry standards "permit, and, in fact, industry members continue to place, advertisements in television and print media with substantial youth audiences." Appendix E, p. E020, FTC July 2004 Report, at pp. 20-28 & 54.

State's Reply to Response to MSJ       *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

1  The Act seeks to limit the specific harms caused by playing violent video games, given the unique, interactive, first-person characteristics of video games. Plaintiffs cannot seriously dispute the fact that video games are exemplary teachers due to their obvious differences from other types of media [2], but they curiously argue that the "fact that educational video games exist signifies that video games are more like other media, such as books and movies, not less." Pls.' Resp. Mot. Summ. J., 12:23-24. Of course, Plaintiffs cite nothing to support this claim.

Plaintiffs argue that less restrictive means exist to further the State's interest. Plaintiffs claim that many game consoles now come equipped with controls that allow parents to limit which games their children play. Pls.' Resp. Mot. Summ. J., 14:10-15. Plaintiffs cite their own press release that indicates that "new" consoles "will" include such controls. Plaintiffs argue that the "State has not shown, and cannot show, that these parental controls are not viable . . . ." *Id.*, at 14:15-18.

Plaintiffs have presented no evidence demonstrating that these controls actually existed at the time the Legislature considered the Act. Plaintiffs do not even explain to this Court what exactly these controls will allow parents to do. But more importantly, Plaintiffs essentially argue that it would be better to allow children to continue spending their money on these ultra-violent video games, only to have their parents prevent them from playing the games once they return home, and only then if they have purchased one of these new consoles containing the parental control feature. The effectiveness of this scenario is a far cry from simply prohibiting children from purchasing the games in the first place.

Plaintiffs have failed to establish that a more narrowly tailored, less restrictive means exists to advance the State's compelling interest. Therefore, because the Act survives strict scrutiny, the State is entitled to summary judgment in its favor.

## IV.

**THE ACT'S DEFINITIONS ARE NOT IMPERMISSIBLY VAGUE.**

Plaintiffs essentially argue that they, as representatives of the video game industry, are not

---

2. Appendix B, p. B003, Gentile & Gentile, *Violent Video Games as Exemplary Teachers*, (violent video games are "exemplary" teachers of aggression).

State's Reply to Response to MSJ   *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

6

competent to apply the plain language of the Act to their video games. Plaintiffs claim that, in the video game context, it is impossible for them to determine whether a game depicts an image of a human being, or whether a game might appeal to a deviant or morbid interest in minors. Pls.' Resp. Mot. Summ. J., pp. 15-16. Plaintiffs even claim that the basic concept of "harmful to minors" is "incoherent and unprecedented." *Id*., at 16:1-3.

The Act is straightforward in defining what it covers. If a player is able to kill, maim, dismember, or sexually assault an image of a human being in such a manner that a reasonable person would find the game as a whole appeals to a deviant or morbid interest in minors, is patently offensive to prevailing community standards as to what is suitable for minors, and causes the game, as a whole, to lack serious literary, artistic, political, or scientific value for minors, then it is covered by the Act. Act, Civil Code, § 1746(d)(1)(A). As this Court previously recognized, "It should be readily apparent to an ordinary person that . . . the Act was intended to cover games in which it looks like a player can harm people in the ways described." Prelim. Inj. Order, 6:24-26.

The secondary definition contained in the Act is just as easily understood. A video game falls within the definition of the Act if it enables the player to "virtually inflict serious injury upon images of human beings or characters with substantially human characteristics in a manner which is especially heinous, cruel, or depraved in that it involves torture or serious physical abuse to the victim." Act, Civil Code, § 1746(d)(1)(B). The terms "heinous," "cruel," "depraved," "torture," and "serious physical abuse" are all specifically defined by the Act, and have themselves been upheld against vagueness challenges. *See United States v. Jones*, 132 F.3d 232, 249-50 (5th Cir. 1998) (finding that similar definitions for cruel, depraved, heinous, serious physical abuse and torture were not unconstitutionally vague and did not lead to an arbitrary imposition of the death penalty).

Plaintiffs cite this Court to no binding authority holding the terms used in the Act unconstitutionally vague. Any person of ordinary intelligence can understand the meaning and application of the Act. Therefore, the Act is not impermissibly vague and the State is entitled to summary judgment.

State's Reply to Response to MSJ *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

7

**V.**

**THE ACT'S LABELING PROVISION IS CONSTITUTIONALLY PERMISSIBLE.**

Plaintiffs do not even address the State's argument that the Act's labeling provision is constitutionally permissible under *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626 (1985). Plaintiffs do not even cite *Zauderer* in their brief. Plaintiffs simply argue that the labeling provision requiring the placement of an "18" on the front of covered games for retail sale in the State is a form of compelled speech subject to strict scrutiny. Pls.' Resp. to Mot. Summ. J., 17:2-14. Plaintiffs' circular argument is not compelling.

In *Zauderer*, the Supreme Court upheld a requirement that attorneys advertising services on contingent-fee basis affirmatively disclose that clients will have to pay costs even if their lawsuits are unsuccessful. 471 U.S. at pp. 652-53. Such disclosure requirement was compelled speech. But the Court held that, in reviewing government mandated disclosure requirements of factual information in advertising, the "constitutionally protected interest in *not* providing any particular factual information in . . . advertising is minimal." *Id.*, at p. 651 (emphasis in original). The Court set forth the appropriate level of judicial review for such disclosure requirements on commercial speech stating, "we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." *Ibid*. And when "the possibility of deception is . . . self-evident . . . we need not require the State to 'conduct a survey of the . . . public before it [may] determine that the [advertisement] had a tendency to mislead.'" *Id.*, at pp. 652-53 (internal citation omitted). This lesser standard of review is appropriate because "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides . . . ." *Id.*, at p. 651.

Here, the labeling provision of the Act applies only to covered video games that are "for retail sale" in California, and only requires the disclosure of factual information. Act, Civ. Code, §1746.2. The cover of a video game displayed for retail sale is the prime advertising space, which easily communicates factual messages to potential consumers and retailer. "[A]dvertising pure and simple" constitutes commercial speech for purposes of First Amendment analysis.

State's Reply to Response to MSJ   *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

8

*Zauderer*, 471 U.S. at p. 637. Because the Act's labeling provision impacts the purely commercial aspect regarding retail sales of the covered video games, it is subject to review under *Zauderer*.

The Act's labeling requirement serves the self-evident purpose of communicating to consumers and store clerks that the video game cannot be legally purchased by anyone under 18 years of age. This requirement is necessary, in part, because of the misleading effect of the ratings included on the cover of video games by the industry itself. The cover of video games sold in California presently display the ESRB's independent, self-imposed rating from "E" for Everyone to "AO" for Adults Only. Lowenstein Decl., ¶¶ 4-8. Such ratings only reflect the industry's recommendation of the appropriate age group of the particular games and do not communicate any factual information regarding the legality of the sale of the game to children.

It is also self-evident that individuals and store clerks could be deceived by the ESRB rating appearing on the cover of a game subject to the Act's restrictions, believing that an "M" or "AO" rating can legally be sold to children. Absent the "18" label appearing on the cover of such games, consumers and store clerks would have essentially no way of knowing whether or not a child could legally purchase the game. Thus, the labeling provision is reasonably related to the State's interest in preventing deception to consumers and retailers. Therefore, the labeling provision is constitutionally permissible as a matter of law, and the State is entitled to summary judgment in its favor on Plaintiffs' challenge.

## VI.

**THE ACT DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE.**

Plaintiffs fail to adequately address the State's argument that the Act does not violate their right to equal protection. Plaintiffs essentially argue that because, under their theory, the Act violates the First Amendment it also violates the Equal Protection Clause.

A legislative enactment that does not create a suspect classification or impinge upon a fundamental right need only be show that it bears some rational relationship to a legitimate government interest. *City of Dallas v. Stanglin*, 490 U.S. 19, 23-24 (1989). In the instant case, the Act creates no suspect classification and does not implicate a fundamental right. The right to

State's Reply to Response to MSJ    *Video Software Dealers Association, et al. v. Arnold Schwarzenegger, et al.*
C 05 4188 RMW RS

sell harmful material to children cannot be considered a fundamental right under any circumstances. Therefore, the Act is to be reviewed under rational basis.

The Act's requirement that covered video games must be sold only to persons 18 or older plainly bears a rational relationship to the State's legitimate interest in protecting children from the harmful effects of playing the covered games. Moreover, even if the Act were subject to heightened judicial scrutiny under the Equal Protection Clause, it is constitutional for the same reasons set forth in section I, above. Therefore, as a matter of law, the Act does not violate Plaintiffs' right to equal protection of the laws.

## CONCLUSION

The State has met its burden by demonstrating that each and every cause of action set forth in Plaintiffs' complaint fails as a matter of law. Therefore, for all of the foregoing reasons, the State respectfully requests that summary judgment be entered in its favor on each cause of action, that the preliminary injunction be lifted, and that the complaint be dismissed.

Dated: April 28, 2006

Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

LOUIS R. MAURO
Senior Assistant Attorney General

CHRISTOPHER E. KRUEGER
Supervising Deputy Attorney General

SUSAN K. LEACH
Deputy Attorney General


 /s/ Zackery P. Morazzini
ZACKERY P. MORAZZINI
Deputy Attorney General
Attorneys for Defendants Governor Arnold Schwarzenegger and Attorney General Bill Lockyer