1    ANN MILLER RAVEL, County Counsel (S.B. #62139)
     DAVID M. ROLLO, Deputy County Counsel (S.B. #111998)
2    OFFICE OF THE COUNTY COUNSEL
     70 West Hedding, East Wing, 9th Floor
3    San Jose, California 95110-1770
     Telephone: (408) 299-5900
4    Facsimile: (408) 292-7240

5    Attorneys for Defendant
     ANN MILLER RAVEL, IN HER
6    OFFICIAL CAPACITY AS COUNTY
     COUNSEL FOR THE COUNTY OF
7    SANTA CLARA

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11

12   VIDEO SOFTWARE DEALERS        )    No.    C05-4188
     ASSOCIATION, et al.,          )
13                                 )    DECLARATION OF DAVID M. ROLLO IN
                                   )    OPPOSITION TO MOTION FOR
14          Plaintiffs,            )    ATTORNEYS' FEES AND COSTS
                                   )
15   v.                            )    Date:   October 19, 2007
                                   )    Time:   9:00 a.m.
16   ARNOLD SCHWARZENEGGER, et al., )   Crtrm:  6
                                   )
17          Defendants.            )
                                   )
18   _____)

19          I, David M. Rollo, hereby declare as follows:

20          1.    I am employed as a Deputy County Counsel for the County of Santa Clara and

21   am licensed to practice before all courts of the State of California. I am attorney of record for

22   the County Defendants in the above entitled action.

23          2.    That attached hereto as Exhibit "A" is a true and correct copy of the case of

24   *Entertainment Software Association; Video Software Dealers Association, et al. v. Rod*

25   *Blagojevich, in his official capacity as Governor of the State of Illinois, et al.* (Slip copy)

26   //

27   //

28   //

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

Dec. of David Rollo in Opposition to Motion for
Attorneys Fees and Costs          -1-                              C05-4188

Dockets.Justia.com

1  2006 WL 3694851 (N.D. Ill.).

2      I declare under penalty of perjury that the foregoing is true and correct. This declaration

3  was executed on September 25, 2007, at San Jose, California.

4

5                              _____/S/_____

6                              DAVID M. ROLLO

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  96458.wpd

28

ANN MILLER RAVEL
County Counsel
County of Santa Clara
San Jose, California

Dec. of David Rollo in Opposition to Motion for
Attorneys Fees and Costs                    -2-                              C05-4188

Westlaw.

Slip Copy                                                                                    Page 1

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

**H**
Entertainment Software Ass'n v. Blagojevich
N.D.Ill.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. Illinois,Eastern
Division.
ENTERTAINMENT SOFTWARE ASSOCIATION;
Video Software Dealers Association; and Illinois Retail
Merchants Association, Plaintiffs,
v.
Rod BLAGOJEVICH, in his official capacity as Governor
of the State of Illinois; Lisa Madigan, in her official
capacity as Attorney General of the State of Illinois; and
Richard A. Devine, in his official capacity as State's
Attorney of Cook County, Defendants.
**No. 05 C 4265.**

Aug. 9, 2006.

Paul March Smith, David P. Sanders, Katherine A Fallow,
Kathleen R. Hartnett, Jenner & Block LLP, Washington,
DC, Wade A. Thompson, Jenner & Block LLP, Chicago,
IL, for Plaintiffs.
Andrew Laurence Dryjanski, Michael J. Kasper, Ellecia
L. Parsell-Burke, Leeann Richey, Office of the Illinois
Attorney General, Laura Cha-Yu Liu, Patrick Edward
Deady, Hogan Marren, Ltd., Limo T. Cherian, O'Rourke,
Mccloskey & Moody, Rachel Jana Fleischmann, Illinois
Attorney General's Office, Stephen L. Garcia, Louis R.
Hegeman, Jeffrey S. McCutchan, Patrick T. Driscoll, Jr.,
Cook County State's Attorney, Chicago, IL, for
Defendants.

MATTHEW F. KENNELLY, District Judge.
*1 The Entertainment Software Association, Video
Software Dealers Association, and Illinois Retail
Merchants Association sued several state and local
officials seeking to enjoin the enforcement of Illinois's
Violent Video Games Law (VVGL) and Sexually
Explicit Video Games Law (SEVGL). The Court issued a
permanent injunction barring the enforcement of these
laws. Plaintiffs now seek $644,545.90 in attorney's fees,
expenses, and costs pursuant to 42 U .S.C. § 1988, 28
U.S.C. § 1920, Fed.R.Civ.P. 54(d), and Northern District
of Illinois Local Rule 54.3.[FN1] For the reasons stated
below, the Court reduces plaintiffs' request by
$134,287.26 and awards plaintiffs $510,258.64.

     FN1. In their reply brief, plaintiffs seek an

additional $39,154.07 for work on this fee
petition. Because plaintiffs did not request such
fees in their opening memorandum, they have
forfeited the point.

**Procedural Background**

Illinois Governor Rod Blagojevich signed the VVGL and
the SEVGL into law on July 25, 2005. On that same date,
the plaintiffs, which are associations of video game
creators, publishers, and retailers, filed this action,
claiming that the statutes violated the First and Fourteenth
Amendments. They requested preliminary and permanent
injunctive relief.

The defendants, Governor Blagojevich, Attorney General
Lisa Madigan, and Cook County State's Attorney Richard
Devine, filed motions to dismiss on various grounds. The
Governor argued that the plaintiffs lacked standing; the
Attorney General maintained that she was immune from
suit under the Eleventh Amendment; and the Cook
County State's Attorney argued that the case did not
present an actual controversy under Article III. In their
motions to dismiss, the Governor and the Attorney
General also contended that certain counts in the
complaint failed to state a claim under Federal Rule of
Civil Procedure 12(b)(6). Finally, the Governor filed a
motion for partial summary judgment, in which the
Attorney General joined, requesting the Court to find the
SEVGL constitutional.

Pursuant to Rule 65(a)(2) of the Federal Rules of Civil
Procedure, the Court consoli the hearing on the motion for
preliminary injunction with the trial on the merits. The
evidence presented at trial primarily concerned the
justifications for the VVGL. Two expert witnesses
testified for the defendants, and three expert witnesses
testified for the plaintiffs. They addressed two issues:
whether minors who play violent video games experience
an increase in aggressive thoughts, affect, and behavior,
and whether minors who play such games experience a
decline in brain activity in the region controlling
behavior. The plaintiffs also submitted affidavits
discussing the chilling effect that both the VVGL and the
SEVGL would have on their members' expression.

On December 2, 2005, the Court issued a ruling denying
defendants' motions to dismiss and for partial summary
judgment and granting plaintiffs' request for a permanent
injunction. The defendants have appealed from the denial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy                                                                                                Page 2

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

of the Attorney General's claim of sovereign immunity and the entry of the injunction against enforcement of the SEVGL. The defendants did not appeal the Court's entry of an injunction barring enforcement of the VVGL. The Court of Appeals heard oral arguments on June 5, 2006 but has yet to issue its decision.

### Discussion

*2 Courts are authorized to award attorney's fees, expenses, and costs to the prevailing parties in an action brought under section 1983. See 42 U.S.C. § 1988; 28 U.S.C. § 1920; Fed.R.Civ.P. 54(d); Local Rule 54.3. Defendants contend that plaintiffs' claimed attorney's fees are not reasonable and that their costs are not justified.

### A. Prevailing party

The defendants argue that it is too early to tell whether the plaintiffs prevailed on the two issues on appeal, namely whether the Attorney General was immune from suit and whether the SEVGL was unconstitutional. The plaintiffs concede this point and offer an affidavit stating that at most, six percent of the fees and costs in this case were attributable to work on those issues. The defendants do not challenge this estimation. In the event that the defendants succeed in their appeal, the Court will reduce the plaintiffs' award by six percent upon remand of the case.

### B. Attorney's fees

Plaintiffs seek reimbursement for 1,453.75 hours of attorney time and 167.5 hours of paralegal time, at hourly

| Attorney | Practice/Experience | Rate |
|---|---|---|
| Paul M. Smith | Former managing partner, Jenner & Block Washington D.C. office Co-chair Media/First Amendment and Supreme Court/Appellate practices 1979 law | $585.00 |

rates ranging from $215 .00 to $585.00 for the attorneys and $100.00 to $210.00 for the paralegals. Defendants contend that the rates and the number of hours are unreasonable. " The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

### 1. Rates

#### a. Attorneys

The reasonable hourly rate for an attorney is the market rate for her services. See Fogle v. William Chevrolet/ Geo, Inc., 275 F.3d 613, 615 (7th Cir.2001)." An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." Spegon v. Catholic Bishop of Chic., 175 F.3d 544, 555 (7th Cir.1999) (citations omitted). The Seventh Circuit has made it clear that an attorney's actual billing rate is presumptively the best measure of the market rate for her services. See People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1310 (7th Cir.1996) (citing Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir.1993)). An attorney seeking fees has the burden of proving her market rate, but once she does, opposing counsel bears the burden of showing why the hourly rate should be lower. Spegon, 175 F.3d at 554-555.

Plaintiffs claim the following market rates for their attorneys:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                           Page 3

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

| | | |
|---|---|---|
| | graduate See Sanders Decl. ¶ 6. | |
| David P. Sanders | Co-chair Media/First Amendment practice 1974 law graduate See Sanders Decl. ¶ 5. | $495.00 |
| Katherine A. Fallow (2005) | Partner 1996 law graduate See Sanders Decl. ¶ 7. | $425.00 |
| Katherine A. Fallow (2006) | same | $450.00 |
| Kathleen R. Hartnett | Associate 2000 law graduate See Sanders Decl. ¶ 8. | $340.00 |
| Amy L. Tenney | Associate 2000 law graduate See Jenner & Block, Our People, Amy L. Tenney, http://www.jenner.com/people/bio.asp?id=1013 (last $340.00 visited Aug. 8, 2006). | $340.00 |
| Matthew A. Albaugh | Associate 2001 law graduate See Baker & Daniels, Professionals, Matthew A. Albaugh, http://www. | $310.00 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 4
Slip Copy, 2006 WL 3694851 (N.D.Ill.)
(Cite as: Slip Copy)

| | bakerd.com /professionals/bio.cfm? id=657 (last visited Aug. 8, 2006). | |
|---|---|---|
| Matthew Hellman | Associate 2002 law graduate See Jenner & Block, Our People, Matthew Hellman http://www.jenner.com/people/bio.asp?id=1655 (last visited Aug. 8, 2006). | $275.00 |
| Duane C. Pozza (2005) | Associate 2002 law graduate See Jenner & Block, Our People, Duane Pozza http://www.jenner.com/people/bio.asp?id=1234 (last visited Aug. 8, 2006). | $275.00 |
| Duane C. Pozza (2005) | same | $325.00 |
| Wade A. Thomson | Associate 2003 law graduate See Jenner & Block, Our People, Wade Thomson http://www.jenner.com/people/bio.asp?id=126 | $215.00 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 5

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

| | | |
|---|---|---|
| | 7 (last visited Aug. 8, 2006). | |
| Thomas G. Pulham | The Court was unable to find specific information about Pulham. | $215.00 |

**\*3** Defendants argue that counsel's self-serving affidavits are insufficient to establish their market rates. *See Spegon, 175 F.3d at 556*. Plaintiffs' counsel respond that these are their normal rates and that Jenner & Block charged and plaintiffs paid these rates. This is evidenced by the seventy-one pages of invoices submitted by plaintiffs' counsel. Plaintiffs' counsel also assert that the plaintiffs paid them at the same hourly rates for similar litigation in California and Michigan. Sanders Decl. ¶ 11; Second Fallow Decl. ¶ 2; ESA Mem., Ex. 1. Because Jenner & Block normally charges clients at the above rates and plaintiffs actually paid counsel at these rates, the Court concludes that the plaintiffs have established the rates set forth above as their attorneys' market rates.

Defendants nonetheless respond that the actual market rate for plaintiffs' attorneys is far below the amount they billed plaintiffs. Defendants initially contend that the hourly rate for plaintiffs' counsel is $200.00 per hour because Jenner & Block charges only that amount when its attorneys represent the State of Illinois in similar cases. Quinlan Decl. ¶¶ 5, 12, 13.

In response, plaintiffs cite *People Who Care,* a case in which the plaintiffs' attorneys had charged the Chicago Board of Education (CBOE), one of their largest clients, lower rates than those charged to its other clients. *See People Who Care, 90 F.3d at 1313*. According to the Seventh Circuit, " atypical billing arrangements with certain clients should enter a court's calculation in a manner that is consistent with the attorney's overall practice." *Id.* The court recognized that work for the CBOE may have constituted fifty to sixty percent of the plaintiffs' attorneys' practice but found that this was irrelevant because " there [was] no indication that [plaintiffs' counsel] would have billed any more hours to the CBOE" had it spent less time working for plaintiffs and more time working for other clients. *Id.* The court found that the lower rate charged to the CBOE should at most constitute five percent of plaintiffs' counsel's hourly rate. *Id.*

Defendants cite evidence that Jenner & Block received $2.3 million in legal fees from the state in fiscal year 2002 and had $1.4 million in contracts with the state for fiscal years 2005 and 2006 combined. Quinlan Decl. ¶¶ 10-11. Defendants, however, present no evidence about what percentage of Jenner & Block's work-particularly what percentage of the work done by the attorneys in this case-is done on behalf of the State of Illinois at below-market rates. The Court is persuaded by plaintiffs' counsel's affidavits that Jenner & Block spends a small portion of its time representing the state and that the attorneys in this case have not represented the state during the time periods relevant to this lawsuit. *See* Sanders Decl. ¶ 11; Second Fallow Decl. ¶¶ 2, 4-5. For these reasons, the Court concludes it is inappropriate to reduce plaintiffs' counsel's hourly rates on this basis.

**\*4** Defendants also contend that the hourly rate for plaintiffs' attorneys, some of whom have their offices in the District of Columbia, is too high for the Chicago market. Based on hourly rates awarded in other cases in this district, defendants suggest the following rates for the attorneys and paralegals in this case: $325.00 to $350.00 for plaintiffs' primary attorneys, Paul Smith, David Sanders, Katherine Fallow, and Kathleen Hartnett; $200.00 for other associates; and $100.00 for paralegals. In support of this argument, defendants cite several cases in which courts, lacking evidence of an attorney's actual rates, were forced to rely on the billing rates of other attorneys doing similar work to approximate the attorney in question's market rate. *See, e.g., Williams v. Viking Dodge, Inc., No. 05 C 5281, 2006 WL 1156396, at \*3-4 (N.D.Ill. Apr.26, 2006); Curtean v. Fed. Mortgage, Inc., No. 05 C 292, 2005 WL 1661992, at \*5 (N.D.Ill. July 13, 2005)*. These cases are inapposite, however, because plaintiffs have submitted evidence establishing their market rates.

The other cases cited by the defendants undermine their position. The courts in those cases (including this Court) applied hourly rates that were far less than those sought

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: Slip Copy)**

here because those were the market rates of the attorneys who were petitioning for fees in those cases. *See Bull v. Coyner,* No. 98 C 7583, 2001 WL 630669, at *1-2 (N.D.Ill. June 4, 2001) (rejecting attorney's request for a higher than usual hourly rate); *Woodard v. Chicago Bd. of Educ.,* No. 00 C 5155, 2002 WL 31749179, at *2 (N.D.Ill.Dec. 6, 2002) (rejecting opposing party's request to reduce established hourly rate based on affidavits regarding other attorneys' rates). The courts in those cases found that the attorneys' market rates were clearly established and therefore declined to depart upward or downward based on evidence of the rates of other attorneys in comparable cases.

Defendants also cite *In re Subpoenas Issued to Danze,* No. 05 C 4538, 2006 WL 211942, at *2-3 (N.D.Ill. Jan.18, 2006), a case in which one of our colleagues concluded that an attorney was not entitled to his usual hourly rate of $495.00 even though his clients paid him at that rate. The Court recognized that the attorney-a partner in his law firm with thirty-eight years of experience-was well-qualified. Because the case in question did not involve the attorney's area of expertise, however, the Court concluded that he was only entitled $425.00 per hour for his work on the case. *Id.*

The same is not true in this case. For the most part, the primary attorneys in this case performed work in their area of expertise-First Amendment law. Sanders Decl. ¶¶ 5-8. Smith and Fallow have extensive experience litigating First Amendment cases throughout the country, including before the United States Supreme Court. *Id.* ¶¶ 6-7.Smith, Fallow, and Hartnett have particular expertise litigating cases challenging laws regulating violent video games. *Id.* ¶¶ 6-8.Smith has practiced law for twenty-seven years, serves as the co-chair of Jenner & Block's First Amendment and Appellate Practice, has argued before the Supreme Court twelve times, and clerked for a federal appellate court and the Supreme Court. *Id.* ¶ 6. Fallow is a partner who has practiced law for ten years and clerked for federal district and appellate courts. *Id.* ¶ 7. Hartnett is an associate who has practiced law for six years and clerked for a federal appellate court and the Supreme Court. *Id.* ¶ 8. The five other associates who worked on the case ranged from senior to junior associates, and their rates, which went from $310.00 to $215.00, reflected both their years of practice and other experiences, including First Amendment expertise and clerkships in both the state and federal courts.

*5 The Seventh Circuit has warned that " there is no single, market-wide fee for a given case." *Fogle,* 275 F.3d at 615. The court has also stated that " lawyers who fetch

above-average rates are presumptively entitled to them, rather than to some rate devised by the court." *Gusman,* 986 F.2d at 1150. In this case, the Court recognizes that plaintiffs' hourly rates, particularly those for its primary attorneys, are above average for attorneys with the same number of years of experience. Nevertheless, the plaintiffs considered their attorneys to be better than average and paid them accordingly. The Court agrees with this evaluation and concludes that plaintiffs' counsel's hourly rates reflect the market value of their services.[FN2]

> FN2. The one partial exception is Sanders. Sanders is unquestionably a highly qualified attorney: he has thirty-two years of experience and, along with Smith, is co-chair of Jenner & Block's Media and First Amendment practice. *Id.* ¶ 5. In this case, however, it is unclear how much value Sanders' expertise added. Based on plaintiffs' counsel's invoices, Sanders billed at least 8 .75 hours for advising Washington counsel on matters of local practice and procedure. There was no need for Sanders to provide this advice when an associate could have provided it while billing at half his hourly rate. *See Smith v. Richard Wolf Med. Instruments,* 264 F.3d 702, 708 (7th cir.2001) (upholding reduction of fees because partner performed many tasks that could have been delegated to an associate). And as we discuss later, the Court also believes that Sanders billed several unnecessary hours in the case. For these reasons, rather than lowering Sanders' billing rate and reducing his hours, the Court will lower his hours to account for the fact that an associate could have done many of his tasks and for the fact that some of his contributions to the case were redundant.

Defendants finally argue that plaintiffs' attorneys' hourly rates should be reduced because the questions presented in this case were neither novel nor difficult. *See Entm't Concepts III v. Maciejewski,* 514 F.Supp. 1378, 1380 (N.D.Ill.1981). Defendants primarily rely on statements by ESA describing the VVGL and the SEVGL as " virtually identical"  to laws that have been found unconstitutional in other jurisdictions. Gvt. Resp., Exs. D-F. The Court agrees with plaintiffs that this argument is belied by the defendants' own actions. At trial, defendants conceded that every other court that had considered laws regulating violent video games had declared the laws unconstitutional. *See, e.g., Interactive Digital Video Ass'n v. St. Louis County,* 329 F.3d 954 (8th Cir.2003); *James v.*

*Meow Media, Inc.,* 300 F.3d 683 (6th cir.2002); *Am. Amusement Machine Ass'n v. Kendrick,* 244 F.3d 572 (7th cir.2001). Defendants nevertheless argued that the VVGL withstood strict scrutiny because new social scientific and neuropsychological research that was unavailable in the previous cases provided a compelling justification for regulating violent video games. As a result of defendants' claims, plaintiffs' attorneys had to familiarize themselves with these scientific fields, find their own experts, and refute the bases for the VVGL within the course of a few months. In short, the factual and legal issues presented in

| Paralegal | Rate |
|-----------|------|
| Cheryl L. Olson | $210.00 |
| Jessica Jurinek | $150.00 |
| Jennifer Q. Lee | $110.00 |
| Maria Giakoumis | $110.00 |
| Helder G. Agostinho | $110.00 |
| Leslie C. Kendrick | $100.00 |
| Benjamin Shultz | $100.00 |

ESA Mem., Ex. 1.

Defendants argue that the reasonable hourly rate for paralegals is actually $100.00. The most recent case cited by defendants upheld a $105.00 hourly rate for paralegals. *See Williams,* 2006 WL 1156396 at *3-4. The Court finds that the $100.00 hourly rate for Kendrick and Schultz and the $110.00 hourly rate for Agostinho, Giakoumis, and Lee are reasonable. The Court is concerned, however, about allowing the higher hourly rates for Jurinek and Olson. Olson's claimed hourly rate, for example, is only $5.00 less than the claimed hourly rate of Thomson, a third-year attorney. *See* ESA Mem. at 8. These paralegals' experience may well justify their high rates, but plaintiffs have provided no evidence to support such a conclusion. For these reasons, the Court reduces the hourly rates for Jurinek and Olson to $110.00.

## 2. Hours

*6 The prevailing party has the burden of proving the reasonableness of the hours worked by counsel. *Spegon,*

this case were anything but simple. We therefore conclude that there is no basis for reducing plaintiffs' counsel's normal hourly rates.

### b. Paralegals

The reasonable hourly rates for paralegals are also the market rates for their services. *See Spegon,* 173 F.3d at 556. Jenner & Block billed and plaintiffs paid for paralegal services at the following rates:

175 F.3d at 555. Plaintiffs maintain that the number of hours claimed is reasonable based on the amount of work required to draft and file the complaint, draft and file a motion for preliminary injunction, respond to multiple motions to dismiss, conduct and respond to extensive expert discovery, and conduct the trial. Defendants respond that plaintiffs' counsel began preparing for this case prematurely, performed duplicative work, overstaffed the case, and provided vague records documenting the hours claimed. For these reasons, defendants argue that the Court should allow plaintiffs to recover for only 1,202 attorney hours and 120.35 paralegal hours.

Before addressing the defendants' specific arguments, it is important to provide some context about the pace of this litigation. The VVGL and the SEVGL were enacted on July 24, 2005 and were set to go into effect less than six months later, on January 1, 2006. The plaintiffs faced a tight deadline for obtaining an injunction barring the enforcement of these statutes. It is not surprising, therefore, that plaintiffs' counsel began working on the case even before the VVGL and SEVGL became law.

Slip Copy

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

(Cite as: Slip Copy)

Page 8

Defendants nonetheless contend that the Court should disallow any hours billed prior to July 24, 2005, the date the Governor signed the VVGL and the SEVGL.FN3*See Turner v. Carothers,* No. 83 C 1166, 1986 WL 1433, at *1-2 (N.D.Ill. Jan.15, 1986) (denying request for " investigatory work" performed before filing of complaint). Defendants maintain that it was unreasonable for plaintiffs to draft and revise their pleadings during a time period in which the legislature was revising and amending the proposed legislation. Defendants single out 47.25 hours spent preparing a motion for temporary restraining order that was never filed. Plaintiffs demonstrate, however, that this early preparation was necessary. Because proposed versions of the legislation had an immediate effective date, plaintiffs had to be prepared to seek a temporary restraining order immediately upon adoption. *See* Second Fallow Decl. ¶ 13. When the bills were passed and plaintiffs learned that the effective date was January 1, 2006, counsel converted the draft motion for a temporary restraining order into a motion for a preliminary injunction. The Court is persuaded that for the most part, the work performed between April and July 2005 was both reasonable and necessary to the case: if it had not been performed during that period, it would have been conducted in the few months between the enactment of the Illinois legislation and the trial before this Court. To the extent that plaintiffs' counsel performed redundant work, the Court discusses it below.

> FN3. Defendants note that plaintiffs' attorneys' invoices reflect that Fallow spent 1.4 hours researching " proposed Illinois tax law" on April 12, 2005, and that as a result, it is unclear whether subsequent references to Illinois legislation and litigation refer to the tax law or the video game laws at issue in this case. In their reply, plaintiffs state that this entry was erroneously included in the fee petition and therefore reduced their fee request by $637.50.

Defendants also argue that plaintiffs' counsel's hours working on the VVGL are unreasonable because they duplicated work done for two other cases challenging the constitutionality of violent video game laws. *See Entm't Software Assoc. v. Granholm,* 426 F.Supp.2d 646 (E.D.Mich.2006) (granting plaintiff's motion for summary judgment); *Video Software Dealers Assoc. v. Schwarzenegger,* 401 F.Supp.2d 1034 (N.D.Cal.2005) (granting plaintiffs' motion for preliminary injunction). Plaintiffs respond that defendants have mischaracterized

the trajectories of these three cases. According to plaintiffs, because Illinois passed its legislation before Michigan or California, all of the briefing and discovery occurred first or only in this case.

*7 The Court agrees with plaintiffs. Illinois enacted the VVGL on July 25, 2005, almost two months before Michigan and almost three months before California enacted corresponding statutes. Briefing and discovery were first conducted in this case, though plaintiffs subsequently filed pleadings, depositions, and testimonial evidence from this case in the California and Michigan lawsuits. Only this case required plaintiffs to conduct a two-day trial; no trial or evidentiary hearing took place in California or Michigan. Plaintiffs concede that they used their work product from this case in subsequent cases. This may be a basis for reducing attorney's fees in those cases, but not in this one.

Defendants also argue that plaintiffs' counsel overstaffed this case and performed redundant work. Plaintiffs' counsel claim they staffed the case leanly with a senior partner (Smith), a junior partner (Fallow), and a senior associate (Hartnett). Based on the pace of the litigation, the Court believes that plaintiffs were warranted in employing more than one or two attorneys to prepare this case. Plaintiffs' counsel's invoices indicate, however, that some overstaffing took place.

First, there was no reason for a third partner-let alone the other co-chair of Jenner & Block's First Amendment and Media Practice-to contribute over eighty hours to the case. As discussed earlier, Sanders' main function appeared to be advising the Washington attorneys on local practice and procedure. Though he also served as an additional partner to discuss strategy and revise written submissions, plaintiffs have not shown why they reasonably needed another partner to perform these functions when Smith and Fallow, two highly skilled attorneys, were already performing them.

That said, Sanders made reasonable and necessary contributions to the case in preparing for and defending two depositions. Because of the expedited nature of the litigation, it was reasonable for a third partner to assist with these proceedings. For these reasons, the Court allows the plaintiffs to recover for the 23.75 hours that Sanders spent working on depositions. The Court also allows the plaintiffs to recover for half of the 8.75 hours (4.38 hours) Sanders spent advising Washington counsel on local procedure; this was likely necessary, but as discussed earlier, it could have been done by an associate. The Court otherwise denies Sanders' hours because they

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

Page 9

were redundant and unnecessary.

Second, in addition to Hartnett, five other associates contributed a total of 129 hours to the case. The plaintiffs claim that they needed these attorneys to replace individuals who left the firm and to work on discrete tasks throughout the litigation. The Court does not believe, however, that the inclusion of these attorneys' time is consistent with the requirement that counsel petitioning for fees exercise " billing judgment" in making the petition. *See Hensley,* 461 U.S. at 434.

Pulham, who drafted the initial complaint and the motion for a temporary restraining order, spent 80.5 hours on this case; Hartnett, who completed the complaint and the motion for a preliminary injunction that was ultimately filed, spent forty-four hours researching, drafting, and revising these submissions. Plaintiffs have not shown that it is reasonable that associates alone spent over 120 hours on the complaint and what ultimately became the motion for preliminary injunction. Under the circumstances, the Court concludes that these hours likely reflect redundant work performed by Pulham and Hartnett. For that reason, the Court will allow the plaintiffs to recover only for sixty hours of Pulham's work.

*8 Additionally, Thomson, who was responsible for filing documents with the Court, reviewed each of the plaintiffs' submissions before he filed them, even though three partners and one senior associate had already revised them multiple times. *See, e.g.,* Thomson entry for 4.5 hours on 8/23/05 (" Prepared, reviewed, and filed memorandum in support of motion for preliminary injunction and appendix regarding same." ). The Court believes that it was unnecessary for Thomson to review these documents before filing them and therefore denies six of Thomson's hours on this basis.

The fact that the case was overstaffed and that attorneys performed redundant work becomes even more obvious when one examines the number of attorneys who attended depositions, status hearings, and the trial. *See Chic. Messenger Service v. Nextel Commc'ns, Inc.,* No. 01 C 8820, 2005 WL 643216, at *3 (N.D.Ill. Mar.16, 2005) (billing for two lawyers at depositions and status hearings was unreasonable). Two or three attorneys regularly attended depositions when one would have sufficed. *See* Fallow entry for 8.25 hours, Hartnett entry for 9.75 hours, and Thomson entry for 6.5 hours on 11/07/05 (Goldstein Dep.); Fallow entry for 14 hours and Hartnett entry for 10.5 hours on 11/02/05 (Williams Dep.); Smith entry for 8 hours and Thomson entry for 3 hours on 10/13/05 (Anderson Dep.); Smith entry for 7 hours and Hartnett

entry for 9.25 hours on 9/13/05 (Andersen Dep.); Smith and Hartnett entries for 8 hours on 9/12/05 (Lowenstein Dep.).

In addition, both Washington and Chicago attorneys also regularly participated in status hearings, even though the Court made this unnecessary by granting plaintiffs' Washington counsel leave to appear *pro hac vice. See* Smith and Fallow entries for 1 hour and Sanders entry for 0.75 hours on 10/26/05 (telephone status hearing); Smith entry for 3 hours and Sanders entry for 3.5 hours on 10/20/05; Smith entry for 0.75 hours and Sanders entry for 0.50 hours on 9/19/05; Sanders entry for 3.25 hours and Fallow entry for 4.25 hours on 8/23/05.

Finally, up to five attorneys attended the trial at any given time, though the plaintiffs' fee petition provides no justification for their presence. *See* entries for 11/14/05 (Smith-16 hours; Sanders-7.75 hours; Fallow-11.5 hours; and Hartnett-12.25 hours); 11/15/05 (Smith-17 hours; Sanders-8 hours; Fallow-16 hours; Hartnett-12.5 hours; and Thomson-4.75 hours); and 11/16/05 (Smith-6 hours; Sanders-2.75 hours; Hartnett-11.5 hours; and Thomson-4.25 hours). The plaintiffs note that the defendants also sent multiple attorneys to status hearings, depositions, and the trial, but that does not justify plaintiffs' counsel's overstaffing.

In sum, the Court allows plaintiffs to recover for the presence of the primary attorney at each deposition and status hearing. The Court also allows plaintiffs to recover for the hours Smith, Fallow, and Hartnett billed during the trial. The Court denies the hours of any additi attorneys present at these proceedings.

*9 The Court is also concerned that the case was overlawyered. Plaintiffs' primary attorneys in the case-Smith, Fallow, and Hartnett-claim 216 hours, 431.75 hours, and 509.25 hours respectively. Based on plaintiffs' counsel's invoices, however, the Court has difficulty determining whether these hours were reasonable. Many of Smith's billing descriptions are quite vague, making it impossible for the Court to ascertain what he was doing and whether he spent a reasonable amount of time doing it.[FN4]Many of Fallow's and Hartnett's entries contain examples of block billing, making it difficult for the Court to determine whether they spent a reasonable amount of time on each of the listed tasks. *See, e.g.,* Fallow entry for 6.5 hours on 8/08/05 (" Telephone conference with G. Markels, edited and reviewed PI motion, conferred with K. Hartnett; revised and edited brief in support of PI; reviewed game declarations and emailed contact people re same; conferred with K. Hartnett re B. Andersen

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

declaration; emailed B. Andersen re same; incorporated G. Markets' edits into draft brief and emailed to G. Markels." ); Hartnett entry for 6.25 hours on 9/26/05 (" Call with Goldstein re expert report schedule; corresponded with D. Vite and D. Sanders re materials for deposition preparation and scheduling of deposition preparation session and deposition; (redacted); read/responded to correspondence from P. Smith and K. Fallow re case developments; sent T. Price deposition transcript for review; drafted response to governor's motion to dismiss re standing and due process claim." ). This was also true of Thomson, an associate on the case, who evidently spent 5.75 hours drafting a two-page motion for leave to file an oversized brief. *See* Thomson entry for 5.75 hours on 8/15/05 (" Reviewed and revised motion to file an oversized brief; discussed same with D. Sanders; prepared for filing of motion; filed an appearance" ). The Court will disallow 4.75 hours of the time claimed for this task.

> FN4. The plaintiffs contend that the defendants cannot criticize Smith's vague billing descriptions because their billing records are equally vague. *See Farfaras v. Citizens Bank & Trust of Chic.*, 433 F.3d 558, 569 (7th cir.2006) (noting that defendants' objection to plaintiffs' counsel's allegedly vague billing records were hypocritical where defendants' counsel's descriptions were similarly vague); ESA Reply, Ex. A (Kasper 10/5 entry for 6.75 hours on " Preparation of pleadings and exhibits to pleadings" ; Deady 11/10 entry for 6 hours on " Review of case authority and preparation for

| Attorney | Hours Allowed | Total Recovery |
|---|---|---|
| Paul M. Smith | 183.6 | $107,406.00 |
| David P. Sanders | 28.13 | $13,924.35 |
| Katherine A. Fallow | 366.15 [6] | $155,651.25 |

> FN6. The Court reduced Fallow's hours by one because her presence at a status hearing on October 26, 2005 was unnecessary. The Court then reduced her 2005 and 2006 hours by fifteen

| Kathleen R. Hartnett | 401 [7] | $136,340.00 |
|---|---|---|

> FN7. The Court reduced Hartnett's hours by 37.5 hours for depositions at which she was the

hearing" ). In this Court's view, however, defendants' counsel's allegedly poor record keeping cannot be viewed the same way as that of plaintiffs' counsel. The defendants had virtually no chance of obtaining attorney's fees had they won the case and thus there was no reason for them to keep records any more detailed than their clients might have wanted or needed. By contrast, plaintiffs' attorneys knew that they would petition the Court for attorney's fees if they won. It was therefore incumbent upon them to maintain more detailed records of their work during the course of the litigation.

" When a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage." *Harper v. City of Chicago Heights*, 223 F.3d 593, 605 (7th cir.2000). Because the Court concludes that the time entries for Smith, Fallow, and Hartnett are vague and because of the difficulty of detailed recalculation, the Court further reduces their hours by fifteen percent.[FN5]

> FN5. This fifteen percent reduction is made from the net figure resulting from reductions discussed earlier.

In summary, the Court reduces the time claimed by plaintiffs' counsel as follows:

percent, to 364.65 hours and 1.5 hours respectively. After multiplying Fallow's hours for each year by her billing rate for the year, the Court arrived at the total figure of $155,638.50.

second chair. The Court then reduced Hartnett's remaining hours by fifteen percent, to 401 hours. After multiplying these hours by Hartnett's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 11

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

billing rate, the Court arrived at the total figure of $136,340.

| | | |
|---|---|---|
| Amy L. Tenney | 15.50 | $5,270.00 |
| Matthew A. Albaugh | 3.00 | $930.00 |
| Thomas G. Pulham | 60 | $12,900.00 |
| Matthew Hellman | 7.00 | $3,368.75 |
| Duane C. Pozza | 23 | $6,862.50 |
| Wade A. Thomson | 54.5 [8] | $11,717.50 |

FN8. The Court reduced Thomson's hours by six hours for redundant work, 4.75 hours for work on the motion to file an oversized brief, and by 18.5 hours for unnecessary attendance at depositions and at trial. The Court then multiplied Thomson's remaining 54.5 hours by his billing rate to arrive at the total figure of $11,717.50.

**\*10** The Court declines to reduce the hours for plaintiffs' paralegals. The defendants contend that the Court should reduce the claimed hours from 167 to 120.35 hours. All of the defendants' arguments about disallowing hours, however, relate to overstaffing of and overlawyering by attorneys, not paralegals. For this reason, the Court finds no basis for reducing the claimed paralegal hours.

### 3. Costs considered part of attorney's fees

The defendants argue that the Court should categorically disallow plaintiffs' research, photocopying, telephone, postage, and travel costs. The Seventh Circuit has held that " expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in his hourly billing rates-expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses-are part of the reasonable attorney's fee allowed by [section 1988]." *Heiar v. Crawford County, Wisc., 746 F.2d 1190, 1203 (7th cir.1984).* The Court therefore allows these costs but addresses the defendants' arguments as to the reasonableness of plaintiffs' overhead, travel, and meeting expenses.

### a. Overhead

Defendants argue that the Court should disallow $15,685 for plaintiffs' messenger, long distance, and photocopying costs because the plaintiffs have failed to provide sufficient detail about these activities. For the most part, plaintiffs' records do not provide great detail about these expenses, other than providing the number of pages and the per page rates for photocopies. As plaintiffs point out, they are petitioning for attorney's fees under section 1988, not costs under section 1920. They are therefore entitled to recovery of reasonable expenses, not simply those costs that are necessary for the litigation. *See Heiar, 746 F.2d at 1203;Henry v. Webermeier, 738 F.2d 188, 192-93 (7th cir.1984).* Nonetheless, as with a number of their hours, plaintiffs' counsel has provided little explanation as to why these expenses were reasonable. For that reason, the Court disallows fifteen percent of plaintiffs' request and awards them $13,332.25.

### b. Attorney travel

Defendants contend that plaintiffs' counsel's travel expenses of $12,437.10 are unreasonable. Courts may award attorney travel expenses as part of an award of attorney's fees under section 1988 so long as they are not " unnecessarily luxurious." *See Henry, 738 F.2d at 194.* Plaintiffs' contend that plaintiffs' counsel's airline expenses, hotel expenses, and meal expenses were exorbitant and that the Court should therefore reduce their travel costs by fifty percent.

The Court agrees that at least Smith's stay at the Park Hyatt Chicago on October 19 for $364.00 was unnecessarily luxurious; we therefore reduce this amount to $179.00, the daily rate charged to plaintiffs' counsel by the Le Meridien, the hotel plaintiffs' counsel normally

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 12

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

stayed at when in Chicago. The Court also concludes that many of plaintiffs' counsel's meals-even accounting for the presence of multiple individuals-were unnecessarily expensive. *See, e.g.,* $155.21 at Shaw's Crab House on 11/01; $72.69 at Shaw's on 11/14; and $78.27 at PF Chang's on 11/15. We therefore reduce their business meal expenses by fifteen percent, from $1,428.07 to $1,213.86. The Court also finds no support in plaintiff's submission for $2,598.79 in out-of-town travel expenses for Fallow on August 22 and 23. The Court has located documentation showing that she paid $633.00 for airfare, $230.31 for a hotel room, and $88.00 in cab fare, but the Court denies the remaining $1,647.48 claimed for this trip.

**\*11** The Court therefore reduces plaintiffs' counsel's travel expenses by $2,046.69. The Court otherwise allows the claimed expenses, given the expedited nature of the litigation and the need to make last-minute travel arrangements.

### c. Meeting costs

Defendants argue that the Court should disallow $396.87 in charges for Jenner & Block's in-house catering services at meetings and depositions. Plaintiffs do not respond to this argument. The Court therefore excludes these costs.

| Date | Deponent | Pages/Rate 9 | Requested Amount |
|---|---|---|---|

FN9. For some of the depositions, including those for Lowenstein, Price, Vite, and Williams, the defendants listed the number of pages in the transcript in a letter to plaintiffs included as one

| Date | Deponent | Pages/Rate | Requested Amount |
|---|---|---|---|
| 9/15/05 | Doug Lowenstein (Copy) | 143 pages | $446.40 |
| 9/13/05 | Crossan Andersen (Copy) | Number of pages and rate unavailable | $385.50 |
| 9/16/05 | Ted Price (Copy) | 118 pages | $352.70 |
| 9/29/05 | David Vite (Copy) | 109 pages | $430.20 |
| 10/11/05 | William Kronenberger (Original) | 350 pages at $5.70 per page 168 pages of | $2,801.89 |

### C. Costs under section 1920

The defendants contend that the Court should also reduce plaintiffs' deposition costs to conform with the rates set by the Judicial Conference. The Judicial Conference has established maximum per page deposition transcript rates at $5.50 for daily originals, $4.40 for expedited originals, $3.30 for regular originals, $1.10 for daily and expedited copies, and $0.83 for regular copies. Court reporters must deliver daily transcripts by the next business day, expedited transcripts within seven days, and regular transcripts within thirty days. United States District Court for the Northern District of Illinois, Maximum Transcript Rates-All Parties (Per Page), *http://10.205.15.10 4/CLERKS_OFFICE/CrtReporter/trnscrpt.htm* (last updated Feb. 28, 2003).

Plaintiffs agree that the Judicial Conference rates apply but respond that they are entitled to recover their full deposition costs due to the expedited nature of the litigation. Other than this argument, however, plaintiff provide scant information about the nature of their deposition transcripts. Several of their invoices do not include the number of pages in a transcript, and others do not itemize the services rendered. Specifically, plaintiffs seek the following deposition costs:

of plaintiffs' exhibits. ESA Mem., Ex. 2. For the depositions of Andersen, Goldstein, and Nusbaum, the Court was unable to ascertain the number of pages in the transcript.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

| Date | Deponent | Pages | Amount |
|------|----------|-------|--------|
| | | exhibits at $0.25 per page Rough ASCI-350 pages at $1.75 per page Postage-$25.90 Sales tax-$1.49 | |
| 10/25/05 | Craig Anderson (Original) | 241 pages at $5.18 per page Attendance-$234.78 Exhibits-$45.00 Shipping-$8.00 | $1,536.16 |
| 11/4/05 | Howard Nusbaum (Copy) | Number of pages and rate unavailable | $1152.30 |
| 11/7/05 | Jeffrey Goldstein (Copy) | Number of pages and rate unavailable | $875.20 |
| 11/8/05 | Dmitri Williams (Copy) | 252 pages at $5.55 per page | $1399.7 0 |
| TOTAL | | | $9,380.05 |

Based on the expedited schedule in the case, the Court agrees with plaintiffs that they are entitled to recover for expedited transcripts for depositions that were taken within five weeks of the November trial date, and for daily transcripts for depositions taken in November 2005. The Court declines, however, to award plaintiffs the rate for originals in situations where they obtained only copies. Moreover, where the Court has been unable to ascertain the number of pages in a transcript, we award plaintiffs only a portion of their requested costs. We based this calculation on whether plaintiffs were entitled to a regular, expedited, or daily copy at the time each of these depositions was taken. Finally, because the plaintiffs have failed to demonstrate the need for the extra ASCII version of the Kronenberger transcript, the expense is disallowed. *See, e.g., Fait v. Hummel,* No. 01 C 2771, 2002 WL 31433424, at *2 (N.D.Ill. Oct.30, 2002); *EEOC v. Yellow Freight Sys., Inc.,* No. 98 C 2725, 1999 WL 965854, at *3 (N.D.Ill. Oct.14, 1999). The chart below reflects the adjusted award.

| Date | Deponent | Pages | Rate/Percentage of Claimed Amount | Amount Allowed |
|------|----------|-------|-----------------------------------|----------------|
| 9/15/05 | Doug Lowenstein | 143 pages | $0.83 | $118.69 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

| | | | | |
|---|---|---|---|---|
| | (Copy) | | | |
| 9/13/05 | Crossan Andersen (Copy) | Number of pages and rate unavailable | 25% [10] of $385.50 | $96.38 |

> FN10. The Court arrived at the twenty-five percent figure based on the fact that the costs allowed for other depositions in September 2005 were between twenty to twenty-seven percent of

| | | | | |
|---|---|---|---|---|
| 9/16/05 | Ted Price (Copy) | 118 pages | $0.83 | $97.94 |
| 9/29/05 | David Vite (Copy) | 109 pages | $0.83 | $90.47 |
| 10/11/05 | William Kronenberger (Original) | 350 pages | $4.40 | $1,609.39 (including 168 pages of exhibits at $0.25 per page; postage of $25.90; and sales tax of $1.49) |
| 10/25/05 | Craig Anderson (Original) | 241 pages | $4.40 | $1,348.18 (including $234.78 for attendance; $45.00 for exhibits; and $8.00 for shipping) |
| 11/4/05 | Howard Nusbaum (Copy) | Number of pages and rate unavailable | 20% [11] of $1,152.30 | $230.46 |

> FN11. The Court arrived at this figure based on the fact that amount allowed for the Williams deposition, the only other deposition taken in November 2005, was twenty percent of the

| | | | | |
|---|---|---|---|---|
| 11/7/05 | Jeffrey Goldstein (Copy) | Number of pages and rate unavailable | 20%5 of $875.20 | $175.04 |
| 11/8/05 | Dmitri Williams (Copy) | 252 pages | $1.10 | $277.20 |

the amount claimed by plaintiffs. The Court will therefore allow twenty-five percent of the claimed amount for the Crossan Andersen deposition.

amount claimed by plaintiffs. The Court will therefore allow twenty percent of the claimed amount for the Nusbaum and Goldstein depositions.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                            Page 15

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

TOTAL           $4043.75

### D. Allocation of fees

*12 In his response, State's Attorney Devine requests the Court to allocate the fee award solely against the State of Illinois. Devine cites *Herbst v. Ryan,* 90 F.3d 1300 (7th cir.1996), a case involving a challenge to an Illinois abortion statute. In *Herbst,* Plaintiffs sued the Attorney General, the Director of the Illinois Department of Public Health, and all Illinois State's Attorneys. After the parties entered a consent decree, the district court awarded the plaintiffs attorney's fees and also assigned the State of Illinois sole responsibility for paying them. *Id.* at 1301.

The Seventh Circuit upheld the district court's decision to hold the State of Illinois responsible for paying plaintiffs' attorney's fees. Noting that " the allocation of liability for attorney's fees remains an area in which there is no simple formula of universal applicability," the court identified four guideposts to direct district courts: 1) the remedial purposes of the Civil Rights Act and the role of section 1988 in accomplishing those goals; 2) the relative responsibility of the defendants; 3) institutional concerns; and 4) fairness and practicability. *Id.* at 1304-05. Applying these factors to the case at hand, the court stated:
It is clear that the State's Attorneys, when bringing an action under the criminal laws of the State of Illinois, also are operating as officers of the state. In short, the undertaking was a defense of a state policy by state officers on behalf of the state. The district court certainly committed no abuse of discretion in determining that the " moving force" behind the statute was the State of Illinois.

*Id.* at 1306.

The Court agrees with State's Attorney Devine that the same circumstances are present in this case. Moreover, it would be particularly unfair for Cook County alone to foot part of the bill in this case. The Cook County State's Attorney was the only state's attorney named as a defendant, though there was no evidence that plaintiffs feared prosecution in Cook County any more than in other parts of the state. *See, e.g.,* Devine Resp., Ex. B (Lowenstein Dep.) at 1140-41; Ex. C. (Andersen Dep.) at 95-96; Ex. D (Vite Dep.) at 105-06. Neither the plaintiffs, the Governor, nor the Attorney General have responded to Devine's request to allocate the entire fee award to the state. The Court therefore allocates full responsibility for this fee award to the State of Illinois.

In sum, the Court awards plaintiffs $510,258.64 in attorney's fees and assigns the state of Illinois sole responsibility for paying those fees. The Court has calculated this fee by subtracting the disallowed costs from the plaintiffs' initial fee request as follows:

| | |
|---|---|
| INITIAL REQUEST | $644,545.90 |
| W40 | |
| DISALLOWED EXPENSES | |
| Erroneous billing by Fallow | $ 637.50 |
| Smith disallowed fees | $ 18,954.00 |
| Sanders disallowed fees | $ 27,655.65 |
| Fallow disallowed fees | $ 27,886.25 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 16

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**


| | |
|---|---|
| Hartnett disallowed fees | $ 36,805.00 |
| Pulham disallowed fees | $ 4,407.50 |
| Thomson disallowed fees | $ 6,288.75 |
| Difference between Olson's claimed and allowed rate (8.5 hours multiplied by ($210.00-110.00)) | $ 850.00 |
| Difference between Jurinek's claimed and allowed rate (16.75 hours multiplied by ($150.00-110.00)) | $ 670.00 |
| Difference between claimed and allowed overhead costs ($15,685 minus $13,332.25) | $ 2,352.75 |
| Difference between claimed and allowed rate for Park Hyatt ($364.00 minus $179.00) | $ 185.00 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

| | |
|---|---|
| Difference between claimed and allowed meal expenses ($1,428.07 minus $1,213.86) | $ 214.21 |
| Disallowed meeting expenses | $ 396.87 |
| Difference between claimed and allowed expenses for Fallow trip ($2,598.79 minus $951.31) | $ 1,647.48 |
| Difference between Lowenstein Dep. claimed and allowed rate ($446.40 minus $118.69) | $ 327.71 |
| Difference between Andersen Dep. claimed and allowed rate ($385.50 minus $96.38) | $ 289.12 |
| Difference between Price Dep. claimed and allowed rate ($352.70 minus | $ 254.76 |

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

$97.94)

| | |
|---|---|
| Difference between Vite Dep. claimed and allowed rate ($430.20 minus $90.47) | $ 339.73 |
| Difference between Kronenberger Dep. claimed and allowed rate ($2,801.89 minus $1,609.39) | $ 1,192.50 |
| Difference between Anderson Dep. claimed and allowed rate ($1,536.16 minus $1,348.18) | $ 187.98 |
| Difference between Nusbaum Dep. claimed and allowed rate ($1,152.30 minus $230.46) | $ 921.84 |
| Difference between Goldstein Dep. claimed and allowed rate ($875.20 minus $175.04) | $ 700.16 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 19

Slip Copy, 2006 WL 3694851 (N.D.Ill.)

**(Cite as: Slip Copy)**

| | |
|---|---|
| Difference between Williams Dep. claimed and allowed rate ($1,399.70 minus $277.20) | $ 1,122.50 |
| W40 | |
| ALLOWED FEES AND COSTS | $510,258.64 |

### Conclusion

**\*13** For the reasons stated above, the Court grants plaintiffs' motion for attorney's fees and costs [docket no. 133] and awards plaintiffs attorney's fees and costs of $510,258.64 against the State of Illinois.

N.D.Ill.,2006.
Entertainment Software Ass'n v. Blagojevich
Slip Copy, 2006 WL 3694851 (N.D.Ill.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.