Video Software Dealers Association et al v. Schwarzenegger et al | Doc. 123 Att. 7
Case 5:05-cv-04188-RMW   Document 123-8   Filed 09/28/2007   Page 1 of 8
Case 2:05-cv-73634-GCS-SDP   Document 75   Filed 11/30/2006   Page 1 of 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ENTERTAINMENT SOFTWARE
ASSOCIATION, VIDEO SOFTWARE
DEALERS ASSOCIATION, and MICHIGAN
RETAILERS ASSOCIATION,

          Plaintiffs,

vs.

Case No. 05-73634

HON. GEORGE CARAM STEEH

JENNIFER M. GRANHOLM, in her official
capacity as Governor of the State of Michigan;
MICHAEL A. COX, in his official capacity as
Attorney General of the State of Michigan; and
KYM L. WORTHY, in her official capacity as
Wayne County Prosecutor,

          Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS

This matter is before the Court following Entertainment Software Association's (ESA), Video Software Dealers Association's (VSDA), and Michigan Retailers Association's (MRA) (hereafter referred to as "plaintiffs") successful challenge to Part II of 2005 Mich. Public Act 108 ("the Act"). Plaintiffs brought this case under 42 U.S.C. § 1983, contending that the restriction on the sale or rental of "ultra-violent explicit video games" violated the First Amendment of the United States Constitution and was unconstitutionally vague. This Court granted plaintiffs' request for a preliminary injunction against enforcement of the Act on November 9, 2005, and on March 31, 2006 granted a permanent injunction barring enforcement of the Act, on the basis that it violates the First and Fourteenth Amendments. Plaintiffs now seek attorneys' fees,

expenses and costs for their successful prosecution of this action. Plaintiffs seek fees of $188,760 for Jenner & Block, and $33,168.75 for Bodman, for a total fee of $221,928.75. Plaintiffs also seek costs of $8,245.18 for Jenner & Block and $3,061.08 for Bodman, for a total of $11,306.26. In all, plaintiffs seek a total award of $233,235.01 in fees and expenses.

The Court previously held that it was reasonable for plaintiffs to hire out-of-town counsel Jenner & Block due to their expertise in the issues involved in this litigation and because of their involvement in representing the video game industry in several other cases involving similar laws. The issue presently before the Court is the reasonableness of the rates sought, and in particular the prevailing rate in the Washington D.C. market, which has been the subject of supplemental briefs.

I. Number of Hours Billed

    A. Duplication of Efforts

Defendants object to the fact that Jenner & Block staffed the case with six attorneys and five paralegals. Plaintiff's local counsel, Bodman LLP, staffed the case with an additional three attorneys. Defendant is concerned with hours billed due to the large number of staff involved in the litigation, a practice warned against by Judge Duggan in Gratz v. Bollinger, 353 F.Supp.2d 929, 942. For example, many of Jenner & Block's entries include time billed for telephone conferences, meetings and e-mails between the staff working on the case. Defendant argues for an across-the-board reduction of at least 5% for such duplicative services. Id.

Similarly, defendants object to work performed by Bodman that appears to be duplicative. Specifically, much of Bodman's billings involve reviewing documents

2

already reviewed and billed by Jenner & Block attorneys. The <u>Gratz</u> Court reduced the secondary firm's hours by 10% due to similar duplicative efforts. <u>Id</u>. at 943.

The Court agrees that the large number of plaintiff's attorneys and paralegals involved in this litigation undoubtedly lead to an increase in the time spent communicating within the litigation team, as well as an unavoidable duplication of efforts. The Court, therefore, imposes an across-the-board reduction in hours billed of 5%, based upon a duplication of efforts.

B. <u>Vague Billing Entries and Block Billing</u>

Defendants object to several entries by both law firms as either vague or block billing, where it is impossible for the court to verify the reasonableness of the billing. The <u>Gratz</u> Court made a 10% reduction in the fees requested for similar billing issues. However, the problem with block billing in <u>Gratz</u>, that aggregation prevented separation of time spent on issues on which plaintiffs prevailed from those on which they did not, is not present in this case where plaintiffs prevailed on all issues.

Defendants also oppose paying $600 for the admission fee required for Jenner & Block's attorneys to be admitted to practice in this court when plaintiffs also retained local counsel. Plaintiffs respond that the admission fee of $200 for attorney Paul Smith, as well as his expenses to travel to Detroit for oral argument, were reasonably incurred given that the was lead counsel in the case. Plaintiffs are willing to withdraw their request of $400 in admission fees for attorneys other than Mr. Smith. The Court will, therefore, reduce Jenner & Block's expenses requested by $400.

C. Fees for Travel

The Gratz court awarded only 50% of the out-of-state attorneys' travel time because defendants should not have to bear additional costs incurred because plaintiffs' counsel are located in different cities. Id. at 943. This Court has already ruled that hiring out-of-state counsel was reasonable, so reimbursement for their travel time is also reasonable.

D. Excessive Time

The court decided this case prior to interrogatories, depositions, or any other discovery being issued. Neither party had hired expert witnesses in this case and no evidentiary hearing was held. The case dealt almost exclusively with First Amendment law, an area in which Jenner & Block claims to have substantial expertise. Given Jenner & Block's extensive specialization and expertise, defendants question why it took six experienced attorneys a combined total of 479.5 hours; and five paralegal staff a combined total of 41.25 hours. Defendants also question why Jenner & Block needed a local firm to contribute to the "substantive aspects of the case, including the development of Plaintiffs' legal strategy."

There is extensive similarity between plaintiffs' pleadings and documents in this case and the Illinois case, also handled by Jenner & Block. Over 60% of the of the numbered paragraphs in the Complaint filed in this case are identical to the Complaint submitted in Illinois. Over 60% of the paragraphs contained in plaintiff's Memorandum in Support of Motion for Preliminary Injunction filed in this case are similar or identical to paragraphs in the Illinois Memorandum in Support of Motion for Preliminary Injunction.

4

The Court recognizes that the plaintiffs were required to consider the specifics of Michigan law in responding to the State's particular arguments in support of its motion to dismiss, motion to transfer venue, opposition to plaintiff's motion for preliminary injunction and summary judgment pleadings. However, the differences between Michigan and Illinois law and the particular Acts at issue do not support the excessive time spent drafting and preparing documents in this case. The Court orders an across-the-board reduction by 20% of the hours requested by Jenner & Block and Bodman in this case, in addition to the 5% reduction in paragraph 1A above.

II. Rates Charged

To calculate the "reasonable hourly rate" component of the lodestar calculation, the Supreme Court has instructed district courts to assess the "prevailing market rate in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). This Court has previously found that it was reasonable to hire Jenner & Block, and requested supplemental briefs on the prevailing rates in the Washington, D.C. market.

The Court has reviewed and considered the 2005 National Law Journal Survey of rates charged by Washington, D.C.-based law firms, the Altman Weil Survey of standard billing rates for Washington, D.C. firms, and the Laffey Matrix, which has been approved of as a benchmark for reasonable fees in the Washington, D.C. area by the District of Columbia District Courts. McDowell v. Government of D.C., 2006 WL 1933809 (D.D.C. 2006) (citing Muldrow v. Re-Direct, Inc., 397 F.Supp.2d 1, 3 (D.D.C. 2005)).

The rates charged by the Jenner & Block attorneys are within the ranges appearing in the National Law Journal Survey, and are within or slightly above the rates

5

in the Altman Weil Survey. The Jenner & Block rates charged are all above the fees described as reasonable by the Laffey Matrix. For example, Katherine Fallow from Jenner & Block had eight to ten years experience and billed at a rate of $425 per hour in 2005. For the same level of attorney experience, the National Law Journal shows a range of $250 to $1,000; the Altman Weil Survey shows a range of $404 to $450; and the Laffey Matrix gives the billable rate of $290.

While the Court recognizes that Washington D.C. courts have approved of the Laffey Matrix as a benchmark for reasonable fees in the area, the National Law Journal and Altman Weil Survey demonstrate that the hourly rates charged by Jenner & Block are comparable to the rates charged by attorneys of similar experience and at firms of similar size. The Court approves of the rates charged by Jenner & Block as reasonable and will not disturb those rates.

III. Reimbursement for Fee Petition

Plaintiffs argue they are entitled to their costs in litigating the fee petition itself, Coulter v. State of Tenn., 805 F.2d 146, 151 (6th Cir. 1986), and request an additional 3% of the total hourly fee as reimbursement. Alternatively, plaintiff's reserve the right to supplement the record with evidence of their actual costs, which allegedly exceed 3% of the total hourly fee that the Sixth Circuit authorizes. Id.

IV. Attorney Fee and Expense Award

The chart below shows the legal fees recoverable by plaintiffs, after reducing the hours billed by 25%:

**JENNER & BLOCK**

| ATTORNEYS | RATE-05 | HRS | RATE-06 | HRS | TOTAL |
|---|---|---|---|---|---|
| Paul M. Smith | $585 | 28.31 | $600 | 15.94 | 26,125.35 |
| Katherine A. Fallow | $425 | 69.19 | $450 | 10.31 | 34,045.25 |
| Amy L. Tenney | $340 | 123.94 | $385 | 0.19 | 42,212.75 |
| Kathleen R. Hartnett | $340 | 19.31 | N/A | 0 | 6,565.40 |
| Matthew S. Hellman | $275 | 32.25 | $325 | 39.56 | 21,725.75 |
| Duane Pozza | $275 | 20.25 | $325 | 0.38 | 5,692.25 |

| PARALEGALS | RATE-05 | HRS | RATE-06 | HRS | TOTAL |
|---|---|---|---|---|---|
| Cheryl L. Olson | $210 | 9.38 | $225 | 3.38 | 2,730.30 |
| Helder G. Agostinho | $110 | 12.75 | N/A | 0 | 1,402.50 |
| Juva J. Hepburn | $210 | 4.5 | N/A | 0 | 945.00 |
| Christopher C. Carrillo | N/A | 0 | $120 | 0.75 | 90.00 |
| Tricia J. Peavler | $210 | 0.19 | N/A | 0 | 39.90 |

**JENNER & BLOCK SUBTOTAL:**    $141,574.45

**BODMAN LLP**

| ATTORNEYS | RATE-05 | HRS | RATE-06 | HRS | TOTAL |
|---|---|---|---|---|---|
| Dennis Levasseur | $320 | 44.81 | $335 | 6.56 | 16,536.80 |
| Alicia Blumenfeld | $155 | 44.81 | $165 | 7.13 | 8,122.00 |
| Michelle Carter | $165 | 1.31 | N/A | 0 | 216.15 |

**BODMAN LLP SUBTOTAL:**    $24,874.95

**FEES TOTAL:**    $166,449.40

7

After reducing Jenner & Block's expenses by $400, total expenses will be awarded to plaintiff in the amount of **$10,906.26** ($7,845.18 for Jenner & Block and $3,061.08 for Bodman LLP).

Costs for litigating the fee petition will be awarded to plaintiff in an amount equal to 3% of the total hourly fees, or **$4,993.48**.

It is so ordered.

Dated: November 30, 2006

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 30, 2006, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk

---