# EXHIBIT C

Dockets.Justia.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

ENTERTAINMENT SOFTWARE ASSOCIATION AND ENTERTAINMENT MERCHANTS ASSOCIATION,

Plaintiffs,

vs.

MIKE HATCH, in his official capacity as Attorney General of the State of Minnesota,

Defendant.

Civil File No. 06-2268 (JMR/FLN)

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR A PRELIMINARY INJUNCTION**

James E. Dorsey (#137893)
Jennifer A. Kitchak (#317056)
FREDRIKSON & BYRON, P.A.
200 South Sixth Street, Suite 4000
Minneapolis, Minnesota 55402
Telephone: (612) 492-7000
Facsimile: (612) 492-7077

Paul M. Smith
Katherine A. Fallow
Matthew S. Hellman
JENNER & BLOCK LLP
601 13th Street, NW, Suite 1200
Washington, DC 20005
Tel. (202) 639-6000
Fax (202) 639-6066

*Attorneys For Plaintiffs*
*Entertainment Software Association*
*And Entertainment Merchants Association*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

FACTUAL BACKGROUND .......... 3

A. The Nature Of Video Games. .......... 3

B. The Video Game Industry's Voluntary Rating System. .......... 4

C. The Challenged Statute .......... 5

ARGUMENT .......... 6

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CLAIMS. .......... 7

A. This Case Is Directly Controlled by *IDSA*, Which Requires Enjoining the Act. .......... 7

B. The Act Fails Strict Scrutiny. .......... 9

1. The State Cannot Demonstrate a Legitimate Compelling Interest in Restricting Access to Video Games. .......... 10

2. The Act Is Not Narrowly Tailored. .......... 13

C. The Act Impermissibly Incorporates the Voluntary Rating System Into a Punitive Censorship Scheme. .......... 15

D. The Act's Signage Provision Unconstitutionally Compels Speech. .......... 16

II. THE EQUITIES STRONGLY SUPPORT AN INJUNCTION .......... 18

CONCLUSION .......... 19

## TABLE OF AUTHORITIES

### CASES

*44 Liquormart, Inc. v. Rhode Island,*
517 U.S. 484 (1996) .................... 14

*American Amusement Machine Association v. Kendrick,*
244 F.3d 572 (7th Cir. 2001) .................... passim

*American Booksellers Association v. Hudnut,*
771 F.2d 323 (7th Cir. 1985), *aff'd*, 475 U.S. 1001 (1986) .................... 11

*Ashcroft v. ACLU,*
542 U.S. 656 (2004) .................... 15

*Ashcroft v. Free Speech Coalition,*
535 U.S. 234 (2002) .................... 11, 12

*Bantam Books, Inc. v. Sullivan,*
372 U.S. 58 (1963) .................... 16

*Blue Moon Entertainment, LLC v. City of Bates City,*
441 F.3d 561 (8th Cir. 2006) .................... 3

*Boos v. Barry,*
485 U.S. 312 (1988) .................... 12

*Borger ex rel. Borger v. Bisciglia,*
888 F. Supp. 97 (E.D. Wis. 1995) .................... 16

*Brandenburg v. Ohio,*
395 U.S. 444 (1969) .................... 11

*Connection Distribution Company v. Reno,*
154 F.3d 281 (6th Cir. 1998) .................... 7

*Dataphase System, Inc. v. C L Sys., Inc.,*
640 F.2d 109 (8th Cir. 1981) .................... 6

*Dworkin v. Hustler Magazine, Inc.,*
867 F.2d 1188 (9th Cir. 1989) .................... 11

*Elrod v. Burns,*
427 U.S. 347 (1976) .......... 3

*Engdahl v. City of Kenosha,*
317 F. Supp. 1133 (E.D. Wis. 1970) .......... 16

*Entertainment Software Association v. Blagojevich,*
404 F. Supp. 2d 1051 (N.D. Ill. 2005) .......... passim

*Entertainment Software Association v. Granholm,*
No. 05-73634, --- Supp. 2d -- 2006 WL. 901711
(E.D. Mich. March 31, 2006) .......... passim

*Erznoznik v. City of Jacksonville,*
422 U.S. 205 (1975) .......... 12

*Florida Star v. B.J.F.,*
491 U.S. 524 (1989) .......... 13

*Ginsberg v. New York,*
390 U.S. 629 (1968) .......... 6

*Interactive Digital Software Association v. St. Louis County,*
200 F. Supp. 2d 1126 (E.D. Mo. 2002), 329 F.3d 954 (8th Cir. 2003) .......... passim

*Iowa Right to Life Comm., Inc. v. Williams,*
187 F.3d 963 (8th Cir. 1999) .......... passim

*James v. Meow Media, Inc.,*
300 F.3d 683 (6th Cir. 2002) .......... 2, 11

*Joelner v. Village of Washington Park,*
378 F.3d 613 (7th Cir. 2004) .......... 7, 19

*McConnell v. Federal Election Commission,*
540 U.S. 93 (2003) .......... 12

*Motion Picture Association of America v. Specter,*
315 F. Supp. 824 (E.D. Pa. 1970) .......... 16

*Pacific Gas & Electric Co. v. Public Utilities Commission of California,*
475 U.S. 1 (1986) .......... 17, 18

*Potter v. State*,
509 P.2d 933 (Okla. Crim. App. 1973) .................................................... 16

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) .................................................... 10

*Riley v. National Federation of the Blind of N.C., Inc.*,
487 U.S. 781 (1988) .................................................... 17

*Sanders v. Acclaim Entertainment, Inc.*,
188 F. Supp. 2d 1264 (D. Colo. 2002) .................................................... 2

*Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Board*,
502 U.S. 105 (1991) .................................................... 10

*State v. Watkins*,
191 S.E.2d 135 (S.C. 1972), *vacated and remanded on other grounds*,
413 U.S. 905 (1973) .................................................... 16

*Swope v. Lubbers*,
560 F. Supp. 1328 (W.D. Mich. 1983) .................................................... 15

*Texas v. Johnson*,
491 U.S. 397 (1989) .................................................... 2, 12

*Tinker v. Des Moines Independent Community School District*,
393 U.S. 503 (1969) .................................................... 12

*Turner Broadcasting System, Inc. v. FCC*,
512 U.S. 622 (1994) .................................................... 10, 13

*United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit Authority*,
163 F.3d 341 (6th Cir. 1998) .................................................... 18

*United States v. Playboy Entertainment Group, Inc.*,
529 U.S. 803 (2000) .................................................... 10, 13, 14

*United States v. United Foods, Inc.*,
533 U.S. 405 (2001) .................................................... 16

*Video Software Dealers Association v. Maleng*,
325 F. Supp. 2d 1180 (W.D. Wash. 2004) .................................................... passim

*Video Software Dealers Association v. Schwarzenegger*,
401 F. Supp. 2d 1034 (N.D. Cal. 2005) ..... 2, 9

*Virginia v. American Booksellers Association*,
484 U.S. 383 (1988) ..... 6

*Wilson v. Midway Games, Inc.*,
198 F. Supp. 2d 167 (D. Conn. 2002) ..... 2

**STATUTES**

Minn. Stat. § 325I.07 ..... 1, 5

**MISCELLANEOUS**

The Associated Press, *Sony to hand parents video game controls*, Int'l Herald Trib., Nov. 28, 2005, available at http://www.iht.com/articles/2005/11/28/business/sony.php ..... 14

## INTRODUCTION

Plaintiffs Entertainment Software Association ("ESA") and Entertainment Merchants Association ("EMA") submit this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 65, for a temporary restraining order and/or a preliminary injunction preventing Defendant and his officers, employees, and representatives from enforcing Chapter 246, Statutes of 2006 (Minn. 2006) codified at Minn. Stat. § 325I.07 (hereinafter, the "Act"). The Act was signed into law on May 31, 2006, and is due to take effect on August 1, 2006. Plaintiffs ask that the Court enjoin the law from taking effect, and maintain the injunction until the Court has had an opportunity to rule on the merits of Plaintiffs' constitutional challenge to the Act.

Plaintiffs are entitled to a temporary and/or preliminary injunction under controlling legal principles, including the Eighth Circuit's decision in *Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003) ("*IDSA*"). Minnesota's sweeping legislation imposes a civil penalty on minors under the age of 17 who rent or purchase video games rated "M" ("Mature") or "AO" ("Adults Only") by the Entertainment Software Rating Board ("ESRB") – a private entity voluntarily organized by the video game industry. Minn. Stat. § 325I.07(1)-(2). The law also requires video game retailers to post "a sign in a location that is clearly visible to consumers" in 30-point type that says "[a] person under the age of 17 is prohibited from renting or purchasing a video game rated AO or M. Violators may be subject to a $25 penalty." Minn. Stat. § 325I.07(3). Such content-based censorship violates the "bedrock principle underlying the First Amendment . . . that the government may not prohibit the expression

of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

Under controlling law, Plaintiffs are likely to succeed on their constitutional claims. In *IDSA*, the Eighth Circuit invalidated a St. Louis County law that would have banned minors' access to video games rated M or AO by the ESRB, because those games were presumed to be "harmful to minors." The Eighth Circuit struck down the law, squarely holding that the First Amendment forbids attempts by the government to restrict minors' access to video games containing "violent" or other disfavored content. *IDSA*, 329 F.3d at 957. The Seventh Circuit and several district courts have likewise invalidated similar laws. *Am. Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) ("*AAMA*"); *Entm't Software Ass'n v. Blagojevich*, 404 F. Supp. 2d 1051 (N.D. Ill. 2005); *Entm't Software Ass'n v. Granholm*, No. 05-73634, --- F. Supp. 2d ---, 2006 WL 901711 (E.D. Mich. March 31, 2006); *Video Software Dealers Ass'n v. Schwarzenegger*, 401 F. Supp. 2d 1034 (N.D. Cal. 2005) (preliminarily enjoining law restricting minors' access to such games); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004) (striking down law); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002) (rejecting attempts to impose tort liability on "violent" video games as inconsistent with the First Amendment); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (same); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181 (D. Conn. 2002) (same).

Not only are Plaintiffs likely to prevail on their claims, but the equities also weigh strongly in favor of an injunction. *See, e.g.*, *AAMA*, 244 F.3d at 580. As the Eighth

Circuit has recognized, the "'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Iowa Right to Life Comm., Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)); *see also Blue Moon Entertainment, LLC v. City of Bates City*, 441 F.3d 561, 565 (8th Cir. 2006). Plaintiffs will undoubtedly suffer irreparable harm if the Act is allowed to go into effect. The First Amendment rights of members of the public — whose rights are also at stake in this facial challenge — will be similarly impaired. Accordingly, the Act should be enjoined.

## FACTUAL BACKGROUND

### A. The Nature Of Video Games.

Plaintiffs are associations of companies that create, publish, distribute, sell, and/or rent video games. Compl. ¶¶ 11-13. The Act, if allowed to go into effect, will result in censorship and limit the distribution of some of these creative works, based solely upon their expressive content. *Id.* ¶ 15. In this facial challenge, Plaintiffs also assert the rights of willing listeners. *Id.* ¶ 13.

Video games are a modern form of artistic expression. Like motion pictures and television programs, video games tell stories and entertain audiences through the use of complex pictures, sounds, and text. *See* Price Decl. ¶¶ 3-4.[1] These games often contain

---

[1] In support of their Motion, Plaintiffs are submitting the Declaration of Ted Price ("Price Decl."), President and CEO of Insomniac Games, Inc.; Declaration of Crossan R. Andersen ("Andersen Decl."), President of Plaintiff EMA; and Declaration of Douglas Lowenstein ("Lowenstein Decl."), President of Plaintiff ESA. Plaintiffs are also submitting copies of video games that are covered by the Act's restrictions, along with taped recordings of representative play of those games.

storylines and character development as richly detailed as (and sometimes based on) books and movies. *Id.* ¶¶ 3-4, 8, 18, 25, 37. Like great literature, these games often involve themes such as good versus evil, triumph over adversity, struggle against corrupt powers, and quest for adventure. *Id.* ¶¶ 4, 12-41. Indeed, the Eighth Circuit has held that video games "'are as much entitled to the protection of free speech as the best of literature.'" *IDSA*, 329 F.3d at 958 (quoting *Winters v. New York*, 333 U.S. 507, 510 (1948)).

**B. The Video Game Industry's Voluntary Rating System.**

Like other popular media, including motion pictures, television, and music, the video game industry has adopted a voluntary and widely used rating system for video games. *See* Lowenstein Decl. ¶¶ 4-12. That system — which the FTC has called the "most comprehensive" of industry-wide media rating systems — is implemented by the ESRB, a self-regulatory body that assigns independent ratings and descriptions for video game content. *Id.* The ESRB gives one of six age-specific ratings to each game it rates: EC (Early Childhood); E (Everyone); E10+ (Everyone 10 and older); T (Teen); M (Mature); AO (Adults Only). *Id.* ¶ 8. The ESRB also assigns content descriptors to the game, such as "Cartoon Violence," "Crude Humor," "Fantasy Violence," "Mild Violence," "Sexual Themes," and "Strong Language." *Id.* ¶ 9. A game's rating is based on the particular descriptors that are appropriate. For example, a M-rated game could receive that rating based on a variety of factors, including the presence of "strong language" and "mature themes." *See id.* ¶ 11.

The purpose of the ESRB system is to provide easily understood information about games to consumers and parents — not to dictate what is ultimately appropriate for individuals of different ages. *Id.* ¶¶ 6-7, 18. Like the movie rating system, the ESRB system is entirely voluntary; nonetheless, essentially all video game publishers submit their games for rating. *Id.* ¶ 6. Similarly, video game retailers throughout the nation are part of a widespread and voluntary effort to educate consumers about the ESRB system and to engage in a store-by-store policy of restricting the sale of "M" games to individuals under age 17. *See* Andersen Decl. ¶ 7.

**C. The Challenged Statute.**

The Act makes it a state civil infraction for a minor under the age of 17 to "knowingly rent or purchase a restricted video game." Minn. Stat. § 325I.07(2). The Act defines a restricted video game as one rated "'AO' or 'M'" by the ESRB. *Id.* § 325I.07(1). A person who violates this provision is liable for a civil fine in the amount of $25. *Id.* § 325I.07(2). The Act also provides that:

> [a] person or entity engaged in the retail business of selling or renting video games from a location or structure with access to the public shall post a sign in a location that is clearly visible to consumers. The sign must display the following language in 30-point font or larger: "A person under the age of 17 is prohibited from renting or purchasing a video game rated AO or M. Violators may be subject to a $25 penalty."

Minn. Stat. § 325I.07(3). The Act reports no legislative findings nor provides any rationale in support of its restrictions on protected expression.

**ARGUMENT**

In determining whether to issue an injunction on a preliminary basis, a court considers four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant may suffer irreparable harm absent the injunction; (3) the balance between such harm and the injury that granting the injunction will inflict on the other interested parties; and (4) the impact of an injunction upon the public interest. *Iowa Right to Life Comm.,* 187 F.3d at 966 (8th Cir. 1999). "In balancing the equities no single factor is determinative." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

Here, each factor clearly favors Plaintiffs. Plaintiffs are likely to succeed on the merits of their case. Indeed, as noted above, the Eighth Circuit – along with the Seventh Circuit and several other courts – has already ruled that restrictions on minors' access to video games are unconstitutional. The only exception would be limitations on access to games that, hypothetically, might contain sexually explicit material satisfying the test for "obscenity for minors." *See Ginsberg v. New York*, 390 U.S. 629 (1968). The Act, of course, does not attempt to draw that line. *IDSA* is controlling and requires that the Act be enjoined.

Further, Plaintiffs will suffer injury under the First Amendment that is irreparable. That injury will be experienced not only by the producers and sellers of games, but also by would-be buyers and renters, on whose behalf Plaintiffs are entitled to sue. *See Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988). In contrast, neither the State nor the public at large will be harmed by a preliminary injunction for

"there can be no irreparable harm to a [government] when it is prevented from enforcing an unconstitutional statute because 'it is always in the public interest to protect First Amendment liberties.'" *Joelner v. Village of Washington Park*, 378 F.3d 613, 620 (7th Cir. 2004) (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)); *see also Iowa Right to Life Comm.*, 187 F.3d at 970 ("public interest favors protecting core First Amendment freedoms," and weighs in favor of granting a preliminary injunction). For these reasons, Plaintiffs are entitled to an immediate injunction.

## I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CONSTITUTIONAL CLAIMS.

### A. This Case Is Directly Controlled by *IDSA*, Which Requires Enjoining the Act.

The Eighth Circuit's decision in *IDSA* mandates that the Act be preliminarily – and then permanently – enjoined. *IDSA* involved a St. Louis County ordinance making it illegal to sell or rent to a minor a video game deemed "harmful to minors." *See Interactive Digital Software Ass'n v. St. Louis County*, 200 F. Supp. 2d 1126, 1130 (E.D. Mo. 2002), *rev'd*, 329 F.3d 954 (8th Cir. 2003). In addition to defining "harmful to minors," the ordinance contained a section entitled "Presumption of Video Game Contents," which provided a "'rebuttable presumption that video games rated "M" or "AO" by the Entertainment Software Review [sic] Board (ESRB) are harmful to minors.'" *Id.* (quoting ordinance). Thus, like the Act, the law in *IDSA* imposed a content-based ban on minors' access to video games, and tied the ban to whether a game was rated M or AO by the ESRB.

The plaintiffs – including the predecessor organizations of Plaintiffs in this case – challenged the St. Louis County law in federal district court. The district court rejected the Plaintiffs' constitutional challenge, holding, first, that the video games covered by the law were not expression protected by the First Amendment. *Id.* at 1132-35. The court further held that even if video games were protected expression, the law would survive strict scrutiny. *Id.* at 1136-38. The court concluded that the law was supported by the compelling interest in aiding parental authority to direct the rearing of their children. *Id.* at 1136. The court further held that the defendant county government could "rely on society's accepted view that violence is harmful to children," especially where the ESRB had stated that M-rated games may not be suitable for children under 17. *Id.* at 1136-37. According to the district court, because the law served only to limit the potential audience of the plaintiff video game makers, the law was narrowly tailored. *Id.* at 1138. The district court thus upheld the law.

The Eighth Circuit reversed. The Eighth Circuit first held that video game expression was fully protected by the First Amendment. *IDSA*, 329 F.3d at 957-58. Because the law imposed a content-based ban on protected expression, the Eighth Circuit held, strict scrutiny applied. *Id.* at 958 ("reject[ing] the County's suggestion that we should find that the 'graphically violent' video games in this case are obscene as to minors and therefore entitled to less protection."). Proceeding to apply strict scrutiny, the Eighth Circuit held that the County had failed to demonstrate a compelling state interest backed by substantial empirical support. *Id.* at 958-59. The Eighth Circuit noted:

> [C]ontrary to the district court's suggestion . . . the County may not simply surmise that it is serving a compelling state interest because "[s]ociety in general believes that continued exposure to violence can be harmful to children." . . . Where first amendment rights are at stake, "the Government must present more than anecdote and supposition."

*Id.* at 959 (citations omitted). The court also rejected the idea that the ordinance was justified by the interest in aiding parental authority. Noting that children have First Amendment rights, the court held that "the government cannot silence protected speech by wrapping itself in the cloak of parental authority." *Id.* at 960. Having rejected the district court's constitutional analysis, the Eighth Circuit invalidated the law and remanded to the district court to enter an injunction consistent with its opinion.

Because *IDSA* is directly controlling, Plaintiffs are nearly certain to prevail on their constitutional claims. The Eighth Circuit has unequivocally held that a law, like the Act, that seeks to restrict minors' access to video games based on the games' content, violates the First Amendment. Because the bans at issue in *IDSA* and the Act are materially identical – among other things, both attempt to incorporate the ESRB ratings into a government censorship scheme – Plaintiffs are more than likely to prevail on their claims, and are therefore entitled to an immediate injunction.

**B. The Act Fails Strict Scrutiny.**

Even if *IDSA* were not directly controlling, its reasoning dictates that Plaintiffs will prevail on their constitutional challenge to the Act. Without question, the video games restricted by the Act are fully protected by the First Amendment. *IDSA*, 329 F.3d at 958; *AAMA*, 244 F.3d at 577-79; *Granholm*, 2006 WL 901711, at *3; *Blagojevich*, 404 F. Supp. 2d at 1056; *Schwarzenegger*, 401 F. Supp. 2d at 1044; *Maleng*, 325 F. Supp. 2d

1184-85. The Act restricts protected video game expression based on its content – defined by the Act as games rated M or AO. Such a content-based restriction is subject to strict scrutiny, *IDSA*, 329 F.3d at 958, and is "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *see also Blagojevich*, 404 F. Supp. 2d at 1072; *Granholm*, 2006 WL 901711, at *4; *Schwarzenegger*, 401 F. Supp. 2d at 1045. "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 818 (2000). Under the strict scrutiny standard, the State must (1) articulate a compelling state interest; (2) prove that the Act actually serves that interest and is "necessary" to do so; and (3) show that the Act is narrowly tailored to serve that interest. *R.A.V.*, 505 U.S. at 395; *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664-65 (1994); *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118-19 (1991).

**1. The State Cannot Demonstrate a Legitimate Compelling Interest in Restricting Access to Video Games.**

The Act lacks *any* legislative findings or statement of purpose. But even if one were to attempt to intuit the Act's purpose, it would still fail strict scrutiny. Similar laws have been justified primarily on the ground that they prevent violence. *E.g., Blagojevich*, 404 F. Supp. 2d at 1073 (striking down law where legislature had found that "minors who play violent video games are more likely to [e]xhibit violent, asocial, or aggressive behavior [and e]xperience feelings of aggression"); *see also Granholm*, 2006 WL 901711, at *1; *Maleng*, 325 F. Supp. 2d at 1186-87. No court has ever credited the violence-prevention rationale. It is hornbook law that the government may restrict speech to prevent violent behavior by recipients only where the targeted expression "'is

*directed to* inciting or producing *imminent* lawless action and is *likely* to incite or produce such action.'" *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002) (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)). There is no video game exception to *Brandenburg*. As the Sixth Circuit has explained, "[f]ederal courts . . . have generally demanded that all expression, advocacy or not, meet the *Brandenburg* test before its regulation for its tendency to incite violence is permitted." *James*, 300 F.3d at 699. Video games clearly do not meet the *Brandenburg* standard for regulation. They are not intended to produce imminent violence, and there is no reason to think that video games, which are played daily by millions, are likely to cause such violence. *See Blagojevich*, 404 F. Supp. 2d at 1073 (finding that the State had "come nowhere near" to satisfying *Brandenburg*); *Granholm*, 2006 WL 901711, at *3; *AAMA*, 244 F.3d at 575; *James*, 300 F.3d at 698; *cf. Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1199-1200 & n.8 (9th Cir. 1989) (holding that the "causal relationship between pornographic materials and violent actions is ambiguous and unvalidated," and therefore does not establish a "clear and present danger" under First Amendment jurisprudence); *Am. Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 329-30 (7th Cir. 1985), *aff'd*, 475 U.S. 1001 (1986) (pornographic speech that *might* increase violence toward women cannot be restricted where the dangers are not immediate).

No other compelling interest can be marshaled to support the Act. As in *IDSA*, no evidence (much less substantial evidence) exists that the video games restricted by the Act are "harmful" to minors, psychologically or otherwise. 329 F.3d at 958-59; *see also Granholm*, 2006 WL 901711, at *5-*6; *Blagojevich*, 404 F. Supp. 2d at 1074; *Maleng*,

325 F. Supp. 2d at 1188-89. Indeed, any interest in protecting minors from "psychological harm" from video games amounts to nothing more than an illegitimate effort to restrict access to expression based on the view that it will cause minors to think bad thoughts.[2] But the First Amendment forbids governmental restrictions on speech based on the provocative or persuasive effect of that speech on its audience. *See Boos v. Barry*, 485 U.S. 312, 321 (1988) (O'Connor, J., joined by Stevens & Scalia, JJ.) (striking ban on picketing near embassies where purpose was to protect the emotions of those who reacted to the picket signs' message); *Texas v. Johnson*, 491 U.S. at 408-09 (interest in protecting bystanders from feeling offended or angry is not sufficient to justify ban on expression); *see also Blagojevich*, 404 F. Supp. 2d at 1074-75 ("In this country, the State lacks the authority to ban protected speech on the ground that it affects the listener's or observer's thoughts and attitudes."). As the Supreme Court has noted, "First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end." *Free Speech Coalition*, 535 U.S. at 253. Thus, the State simply may not restrict protected expression merely because it dislikes the way that expression shapes individuals' thoughts and attitudes.

---

[2] Minors have a First Amendment right to be free from content-based governmental regulation of the speech they utter or receive. *See, e.g.*, *IDSA*, 329 F.3d at 960; *McConnell v. Federal Election Comm'n*, 540 U.S. 93, 231 (2003) ("Minors enjoy the protection of the First Amendment"); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213-14 (1975); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506-07, 511 (1969).

**2. The Act Is Not Narrowly Tailored.**

Even assuming that a compelling interest for the Act could be found, the Act would still fail strict scrutiny. First, the State would have to demonstrate that the Act's restrictions actually and materially address the alleged government interests. *See, e.g.*, *Turner*, 512 U.S. at 664-65; *Maleng*, 325 F. Supp. 2d at 1189. Here, the fact that the State has singled out video games — even though a wide range of media make comparable violent expression available to minors — is strong evidence that the Act fails to advance the State's interests. *See, e.g.*, *Florida Star v. B.J.F.*, 491 U.S. 524, 540 (1989) (the "facial underinclusiveness" of a regulation undermines the claim that the regulation serves its alleged interests); *Maleng*, 325 F. Supp. 2d at 1189 (explaining that "the Act is too narrow in that it will have no effect on the many other channels through which violent representations are presented to children"); *see also Granholm*, 2006 WL 901711, at *6; *Blagojevich*, 404 F. Supp. 2d at 1075.[3] "Violent" video games "are a tiny fraction of the media violence to which modern American children are exposed." *AAMA*, 244 F.3d at 579. But the Act leaves these other media unaffected. Under the Act, for example, a minor could be legally barred from buying or renting an M-rated video game containing "violent" content, but that same minor could legally buy or rent the movie and

[3] Such differential regulation of comparable expression invokes the specter of impermissible viewpoint discrimination. *See, e.g.*, *Playboy*, 529 U.S. at 812 ("Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles." (striking down a regulation that targeted "adult" cable channels, but permitted similar expression by other speakers)); *Turner*, 512 U.S. at 659 ("Regulations that discriminate among media, or among different speakers within a single medium, often present serious First Amendment concerns.").