# EXHIBIT E

Dockets.Justia.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ENTERTAINMENT SOFTWARE ASSOCIATION; VIDEO SOFTWARE DEALERS ASSOCIATION; and ILLINOIS RETAIL MERCHANTS ASSOCIATION,

Plaintiffs,

vs.

ROD BLAGOJEVICH, in his official capacity as Governor of the State of Illinois; LISA MADIGAN, in her official capacity as Attorney General of the State of Illinois; and RICHARD A. DEVINE, in his official capacity as State's Attorney of Cook County,

Defendants.

No. 05 C 4265

Judge Kennelly

FILED LAL
AUG 2 3 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... iii

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

A. The Nature Of Video Games ..... 2

B. The Video Game Industry's Well-Established Voluntary Rating System ..... 3

C. The Challenged Statutes ..... 4

1. The "Violent" Video Game Ban. ..... 4

2. The "Sexually Explicit" Video Game Ban ..... 5

3. The Act's Labeling, Signage, And Check-Out Restrictions ..... 6

ARGUMENT ..... 7

I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS, GIVEN THE ACT'S SWEEPING CONTENT-BASED INVASION OF FIRST AMENDMENT RIGHTS AND UNCONSTITUTIONAL VAGUENESS ..... 8

A. Video Games Constitute Expression Protected By The First Amendment ..... 8

B. The Act's "Violent" Video Game Restrictions Fail Strict Scrutiny And Violate The First Amendment ..... 8

1. Because the Act Regulates Expression Based On Content, It Must Survive Strict Scrutiny ..... 8

2. The State Does Not Have A Compelling Interest In Restricting Access To The Targeted "Violent" Games ..... 10

a. Preventing "Real-World" Violence ..... 10

b. Preventing Psychological Or Developmental Harm ..... 12

3. The Act Does Not Materially Advance The State's Interests And Is Not Narrowly Tailored ..... 14

C. The Act's "Sexually Explicit" Video Game Restrictions Fail Strict Scrutiny And Violate The First Amendment ..... 16

D. The Act's Labeling, Signage, And Check-Out Provisions Are Unconstitutional ..... 17

E. The Act is Unconstitutionally Vague ..... 21

II. THE EQUITIES STRONGLY SUPPORT AN INJUNCTION ..... 23

CONCLUSION ..... 25

## TABLE OF AUTHORITIES

### CASES

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ........ 15

*American Amusement Machine Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) ........ *passim*

*American Booksellers Ass'n v. Hudnut*, 771 F.2d 323 (7th Cir. 1985), *aff'd*, 475 U.S. 1001 (1986) ........ 12

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) ........ 10, 11, 13

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) ........ 10, 11

*Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503 (7th Cir. 1998) ........ 2, 24

*Connection Distributing Co. v. Reno*, 154 F.3d 281 (6th Cir. 1998) ........ 24

*Eclipse Enterprises, Inc. v. Gulotta*, 134 F.3d 63 (2d Cir. 1997) ........ 9

*Elrod v. Burns*, 427 U.S. 347 (1976) ........ 2, 24

*Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) ........ 9

*Florida Star v. B.J.F.*, 491 U.S. 524 (1989) ........ 14

*FoodComm International v. Barry*, 328 F.3d 300 (7th Cir. 2003) ........ 7

*Ginsberg v. New York*, 390 U.S. 629 (1968) ........ 12, 16

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) ........ 21, 23

*Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003) ........ *passim*

*James v. Meow Media, Inc.*, 300 F.3d 683 (6th Cir. 2002) ........ 2, 10, 11

*Joelner v. Village of Washington Park*, 378 F.3d 613 (7th Cir. 2004) ........ 24

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) ........ 13

*Kolender v. Lawson*, 461 U.S. 352 (1983) ........ 21

*McConnell v. Federal Election Commission*, 540 U.S. 93 (2003) ........ 9

*Miller v. California*, 413 U.S. 15 (1973) ........ 16

*NAACP v. Button*, 371 U.S. 415 (1963) .......... 21

*National People's Action v. Village of Wilmette*, 914 F.2d 1008 (7th Cir. 1990) .......... 24

*O'Brien v. Town of Caledonia*, 748 F.2d 403 (7th Cir. 1984) .......... 24

*Pacific Gas & Electric Co. v. Public Utility Commission of California*, 475 U.S. 1 (1986) .......... 18, 19

*R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) .......... 8, 9

*Reno v. ACLU*, 521 U.S. 844 (1997) .......... 16, 17, 21, 23

*Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988) .......... 18, 20

*Sanders v. Acclaim Entertainment, Inc.*, 188 F. Supp. 2d 1264 (D. Colo. 2002) .......... 2

*Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105 (1991) .......... 10

*Texas v. Johnson*, 491 U.S. 397 (1989) .......... 1

*Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969) .......... 9

*Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622 (1994) .......... 9, 10, 14

*Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) .......... 7

*United States v. Playboy Entertainment Group, Inc.*, 529 U.S. 803 (2000) .......... 8, 14, 15

*United States v. United Foods, Inc.*, 533 U.S. 405 (2001) .......... 18

*Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004) .......... *passim*

*West Virginia Board of Education v. Barnette*, 319 U.S. 624 (1943) .......... 20

*Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167 (D. Conn. 2002) .......... 2

*Winters v. New York*, 333 U.S. 507 (1948) .......... 9

**LEGISLATIVE MATERIAL**

House Bill 4023 (Ill. 2005 ) .......... *passim*

## INTRODUCTION

Plaintiffs Entertainment Software Association ("ESA"), Video Software Dealers Association ("VSDA"), and Illinois Retail Merchants Association ("IRMA") submit this memorandum in support of their motion, pursuant to Federal Rule of Civil Procedure 65, for a preliminary injunction preventing Defendants and their officers, employees, and representatives from enforcing House Bill 4023 (Ill. 2005) (hereinafter, the "Act"). The Act was signed into law on July 25, 2005, and is due to take effect on January 1, 2006.

Plaintiffs are entitled to a preliminary injunction under controlling legal principles. *First*, they are likely to succeed on their claim that the Act is unconstitutional. Illinois's sweeping legislation places *criminal* penalties on the sale or rental of "violent" video games to individuals under age 18; similarly criminalizes the sale or rental of non-obscene but "sexually explicit" video games to individuals under age 18; and imposes numerous other burdens on the expression of consumers, video game retailers, and video game creators. Such content discrimination violates the "bedrock principle underlying the First Amendment . . . that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

Indeed, the Seventh Circuit has already struck down, on First Amendment grounds, a law that is materially indistinguishable from the Act's "violent" video game provisions. *See American Amusement Mach. Ass'n v. Kendrick*, 244 F.3d 572 (7th Cir. 2001) (Posner, J.) ("*AAMA*"). *AAMA* held that "violent" video games are fully protected expression and may not be restricted based on a desire to prevent violence or protect minors from "wildly speculative" harms like those alleged by the Act. *Id.* at 579. Similar attempts to regulate "violent" video games have been invalidated by *every* federal court to have reached the question. *See Interactive*

*Digital Software Ass'n v. St. Louis County*, 329 F.3d 954 (8th Cir. 2003) ("*IDSA*") (ban on "violent" games"); *Video Software Dealers Ass'n v. Maleng*, 325 F. Supp. 2d 1180 (W.D. Wash. 2004) ("*VSDA*") (same); *see also James v. Meow Media, Inc.*, 300 F.3d 683, 696 (6th Cir. 2002) (attempted tort liability); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1279 (D. Colo. 2002) (same); *Wilson v. Midway Games, Inc.*, 198 F. Supp. 2d 167, 181 (D. Conn. 2002) (same).

The Act's other restrictions are equally foreclosed by the First Amendment and Supreme Court precedent. The "sexually explicit" category of video games restricted by the Act is defined much more broadly than the narrow "harmful to minors" category of sexual speech that the Constitution permits a state to regulate (and which the Act itself regulates, in a separate section), and is therefore unconstitutional. The Act also unconstitutionally compels expression through a variety of burdensome and unnecessary labeling and signage requirements.

*Second*, not only are Plaintiffs likely to prevail on their claims, but the equities also weigh strongly in favor of an injunction, as they did in *AAMA*. *See* 244 F.3d at 580. Plaintiffs and their members will suffer irreparable harm if the Act is allowed to go into effect, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). The First Amendment rights of members of the public — whose rights are also at stake in this facial challenge — will be similarly impaired. Accordingly, the Act must be enjoined.

## FACTUAL BACKGROUND

### A. The Nature Of Video Games.

Plaintiffs are associations of companies that create, publish, distribute, sell, and/or rent video games. Compl. ¶¶ 10-13. They bring this action because, if allowed to go into effect, the

Act will censor distribution of some of Plaintiffs' creative works, based solely upon their expressive content. *Id.* ¶ 14. In this facial challenge, Plaintiffs also assert the rights of willing listeners. *Id.* ¶ 15.

Video games are a modern form of artistic expression. Like motion pictures and television programs, video games tell stories and entertain audiences through the use of complex pictures, sounds, and text. *See* Price Decl. ¶¶ 3-4.[1] Video games feature the artwork of leading graphic artists, as well as music — much of it original — that enhances the game's artistic expression in the same way as movie soundtracks. *Id.* These games often contain storylines and character development as richly detailed as (and sometimes based on) books and movies. *Id.* ¶¶ 3-4, 39. Like great literature, these games frequently involve familiar themes such as good versus evil, triumph over adversity, struggle against corrupt powers, and quest for adventure. *Id.* ¶¶ 4, 11-43. Although video games are largely designed to entertain, they also can inform, and even promote certain viewpoints. *See, e.g.*, *AAMA*, 244 F.3d at 578 (describing a "feminist" video game that has "a message, even an 'ideology,' just as books and movies do"); Price Decl. ¶ 4.

**B. The Video Game Industry's Well-Established Voluntary Rating System.**

Like other popular media, such as motion pictures and music, the video game industry has adopted a voluntary and widely used rating system for video games. *See* Lowenstein Decl. ¶¶ 4-11. That system — which the FTC has called the "most comprehensive" of industry-wide

---

[1] In support of their Motion, Plaintiffs are submitting the Declaration of Ted Price ("Price Decl."), President and CEO of Insomniac Games, Inc.; Declaration of Crossan R. Andersen ("Andersen Decl."), President of Plaintiff VSDA; and Declaration of Douglas Lowenstein ("Lowenstein Decl."), President of Plaintiff ESA. Plaintiffs are also submitting copies of video games that may be deemed to be covered by the Act's restrictions, along with taped recordings of representative play of those games. The declarations and supporting materials will be submitted as a separate appendix to the memorandum in support of Plaintiffs' Motion.

media rating systems — is implemented by the Entertainment Software Rating Board ("ESRB"), a self-regulatory body that assigns independent ratings and descriptions for video game content. *Id.* ¶¶ 4-5. The ESRB system includes not only letter ratings (EC, E, E10+, T, M, and AO), but also numerous "content descriptors," descriptive phrases that give consumers and parents additional information about a game's contents. *Id.* ¶¶ 7-8.[2] The purpose of the ESRB system is to provide easily understood information about games to consumers and parents — not to dictate what is ultimately appropriate for individuals of different ages. *Id.* ¶ 6. Like the movie rating system, the ESRB system is entirely voluntary; nonetheless, nearly all video game publishers submit their games for rating. *Id.* Similarly, video game retailers throughout the nation are part of a widespread and voluntary effort to educate consumers about the ESRB system and to require parental consent for the sale of "M" games to individuals under age 17. *See* Andersen Decl. ¶ 18.

**C. The Challenged Statute.**

**1. The "Violent" Video Game Ban.**

The Act imposes a misdemeanor criminal punishment of up to $1,000 on "[a] person who sells, rents, or permits to be sold or rented, any violent video game" to individuals under age 18. Act §§ 12A-15(a), 12A-10(c). "Violent" video games are defined by the Act as those that "include depictions of or simulations of human-on-human violence in which the player kills or otherwise causes serious physical harm to another human." *Id.* § 12A-10(c). "'Serious physical

[2] Sample ESRB content descriptors include "alcohol reference" (reference to and/or images of alcoholic beverages); "cartoon violence" (violent actions involving cartoon-like situations and characters; may include violence where a character is unharmed after the action has been inflicted); "mature humor" (depictions or dialogue involving "adult" humor, including sexual references ); and "suggestive themes" (mild provocative references or materials). *See* Ex. A to Lowenstein Decl. (ESRB Game Ratings, http://www.esrb.com/esrbratings_guide_print.asp).